No. 23-2501
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

ERICA BARRETT, KATHLEEN VINCENT, CONNIE ENDERLE, EDWARD
Q. INGERSON, II, PENNY KENOYER AND GILBERT ONTIVEROS,
individually and on behalf of all others similarly situated, *Plaintiffs- Appellants.*

v.

O'REILLY AUTOMOTIVE, INC., THE BOARD OF DIRECTORS OF
O'REILLY AUTOMOTIVE, INC., O'REILLY AUTOMOTIVE 401(K) PLAN
INVESTMENT COMMITTEE, and JOHN DOES 1-30, *Defendants-Appellees*

---

Appeal from the United States District Court for the Western District of Missouri,
Southern Division, The Honorable Brian C. Wimes, Presiding
22:3111-CV-S-BCW

---

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**

---

Mark K. Gyandoh
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103

*Attorneys for Plaintiffs-Appellants*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This appeal arises from a class action filed in the Western District of Missouri by Plaintiffs-Appellants Erica Barrett, Kathleen Vincent, Connie Enderle, Edward Q. Ingerson, II, Penny Kenoyer, and Gilbert Ontiveros against the fiduciaries of the O'Reilly Automotive, Inc. Profit Sharing and Savings Plan (the "Plan"). Plaintiffs participated in the Plan and bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiffs allege that the Defendant-Appellees breached their duty of prudence and duty to monitor with regard to the Plan's recordkeeping and administrative services fees ("RKA" fees), which Plaintiffs allege were unreasonably high during the putative Class Period. The issue before the Court is whether the District Court erred in dismissing the Complaint with prejudice and whether the Amended Complaint alleged meaningful benchmarks in order to meet the pleading standards of Federal Rule of Civil Procedure 8, *Hughes v. Nw. Univ.*, 142 S. Ct. 737 (2022) and *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009), and is distinguishable from *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 283 (8th Cir. 2022).

Plaintiffs-Appellants respectfully request fifteen (15) minutes of oral argument per side.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 8th Cir. Rule 26.1A, the undersigned counsel of record of Plaintiffs – Appellants, Erica Barret, Kathleen Vincent, Connie Enderle, Edward Q. Ingerson, II, Penny Kenoyer, and Gilbert Ontiveros, certify that Plaintiffs – Appellants have no corporate affiliations.


Date:  September 13, 2023                    Respectfully submitted,

                                             **CAPOZZI ADLER, P.C.**

                                             */s/ Mark K. Gyandoh*
                                             Mark K. Gyandoh
                                             312 Old Lancaster Road
                                             Merion Station, PA 19066
                                             Tel: (610) 890-0200
                                             Email: markg@capozziadler.com

Appellate Case: 23-2501     Page: 3     Date Filed: 09/18/2023 Entry ID: 5317328

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ...........i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF CONTENTS............................................................ iii

TABLE OF AUTHORITIES ........................................................v

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF THE ISSUES ON APPEAL ...................................1

STATEMENT OF THE CASE....................................................2

    I.      Procedural History....................................................3

    II.     Statement of Facts ..................................................4

        A.   Overview of the Plan ....................................4

        B.   The Totality of the Circumstances Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner.5

         a.   The Plan's Total Plan Costs are Much Higher than Those of Its Peers ........................................5

         b.   The Plan's Recordkeeping and Administrative Costs Were Excessive During the Class Period ...........................5

    III.   The District Court's Dismissal of the Complaint................11

SUMMARY OF THE ARGUMENT ........................................12

STANDARD OF REVIEW ....................................................15

ARGUMENT ....................................................................18

Appellate Case: 23-2501    Page: 4    Date Filed: 09/18/2023 Entry ID: 5317328

I.      Plaintiffs Plausibly Alleged Defendants Implemented A Flawed Process for Monitoring the Plan's Administrative and Recordkeeping Fees .................................................................................18

     A.    The District Court Erred in Holding that Defendants Failed to Allege  a Meaningful Benchmark in Challenging Defendants' Excessive RKA Fees..............................................................18

     B.    The Totality of the Circumstances as Alleged in the Amended Complaint Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner.................................25

          i.    The ICI Chart is a Useful Measurement........................27

          ii.   Whether Plaintiffs' Alleged Comparators are Meaningful Comparators for the Challenged Plan Funds is Not Suitable for Resolution at the Motion to Dismiss Stage 27

II.     The Complaint Alleges Sufficient Facts to State A Claim For Fialure To Monitor .........................................................................30

III    The District Court Erred In Dismissing Plaintiffs' Complaint Without Providing Plaintiffs the Opportunity to Seek Leave to Amend ..........31

CONCLUSION ...................................................................33

Appellate Case: 23-2501    Page: 5    Date Filed: 09/18/2023 Entry ID: 5317328

# TABLE OF AUTHORITIES

PAGE(S)

**Statutes**

28 U.S.C. § 1331 ............................................................................1

28 U.S.C. § 1291 ............................................................................1

29 U.S.C. § 1104(a) .......................................................................4

29 U.S.C. § 1104(a)(1)(A) ...........................................................12

29 U.S.C. § 1104(a)(1)(B) .............................................................3

29 U.S.C. §§ 1109(a) ....................................................................4

29 U.S.C. § 1132(a)(2) ..................................................................4

29 U.S.C. § 1132(e)(1) ..................................................................1

29 U.S.C. § 1132(f) .......................................................................1

Fed. R. Civ. P. 8 .............................................................................. i

Fed. R. Civ. P. 12 .........................................................................29

Fed. R. Civ. P. 12(b)(6) ......................................................... 11, 15

Fed. R. Civ. P. 15(a) ....................................................................31

Fed. R. Civ. P. 15(a)(2) ..................................................................2

**Cases**

*Adams v. Am. Family Mut. Ins. Co.*,
813 F.3d 1151 (8th Cir. 2016) ......................................................5

Appellate Case: 23-2501     Page: 6     Date Filed: 09/18/2023 Entry ID: 5317328

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ................................................................ 14, 18, 19, 20

*Allison v. L Brands, Inc.*,
2021 WL 4224729 (S.D. Ohio Sept. 16, 2021) ................................................ 13, 21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................16

*Bell v. Pension Committee of ATH Holding Company, LLC*,
2017 WL 1091248 (S.D. Ind. Mar. 23, 2017) ..........................................................14

*Bilello v. Estee Lauder, Inc., et al.*,
No. 1:20-cv-04770-JMF (S.D.N.Y., June 7, 2021) ..................................................13

*In re Biogen ERISA Litig.*,
2021 WL 3116331 (D. Mass. July 22, 2021) ............................................................13

*Blackmon v. Zachry Holdings, Inc. et al.*,
2021 WL 2190907 (W.D. Tex. Apr. 22, 2021) ...................................................... 14,

*Bouvy v. Analog Devices, Inc.*,
2020 WL 3448385 (S.D. Cal. June 24, 2020).......................................... 12, 27, 29

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585, 598 (8th Cir. 2009) .................................................................*Passim*

*Brown v. MITRE Corp.*,
No. 22-CV-10976-DJC, 2023 WL 2383772 (D. Mass. Mar. 6, 2023)...................13

*Cassell v. Vanderbilt Univ.*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018).................................................... 14, 21, 30

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017)............................................................30

*Davis v. Magna Int'l of America, Inc.*,
2021 WL 1212579 (E.D. Mich. March 31, 2021) ..................................... 13, 21, 29

vi

Appellate Case: 23-2501     Page: 7     Date Filed: 09/18/2023 Entry ID: 5317328

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ............................................................*Passim*

*Disselkamp, et al. v. Norton Healthcare, Inc. et al.*,
2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) .................................. 14, 21

*Falberg v. Goldman Sachs Group, Inc.*,
2020 WL 3893285 (S.D.N.Y. July 9, 2020) ..........................................14

*Feinberg v. T.Rowe Price Group, Inc., et al.*,
2018 WL 3970470 (D. Md. Aug. 20, 2018) ..........................................14

*Frey v. City of Herculaneum,*
44 F.3d 667, 672 (8th Cir. 1995) ............................................. 15 31, 32

*Garcia v. Alticor, Inc.,*
No. 1:20-cv-01078-PLM-PJG (W.D. Mich. Aug. 9, 2021) ............................ 13, 21

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
No. 21-cv-454, 2022 WL 4368188 (M.D.N.C. Sept. 21, 2022) ............................24

*Henderson v. Emory Univ.*,
252 F.Supp.3d 1344 (N.D. Ga. May 10, 2017) ........................................14

*Huang v.* TriNet *HR III, Inc.,*
No. 8:20-cv-2293, 2022 WL 93571, (M.D. Fl. Jan. 10, 2022) ................................28

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022) ................................................. i, 19, 26

*Hughes v. Northwestern Univ.*,
No. 19-140, 2022 WL 199351 (May 25, 2021) ................................. 16, 17

*Hughes v. Nw. Univ,*
63 F.4th 615 (7th Cir. 2023) ................................................. 18, 19, 20

*Johnson v. Fujitsu Tech. and Bus. of Am., Inc.*,
250 F.Supp.3d 460, 466 (N.D. Cal. 2017) ..........................................14

Appellate Case: 23-2501    Page: 8    Date Filed: 09/18/2023 Entry ID: 5317328

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ................................................ 16, 30

*Kendall et al v. Pharmaceutical Product Development, LLC*,
2021 WL 1231415 (E.D.Pa. Mar. 31, 2020)....................................................13

*Khan v. PTC, Inc.*,
No. 1:20-cv-11710-WGY (D. Mass. April 6, 2021)................................................13

*Krueger et al. v. Ameriprise Financial, Inc.*,
2012 WL 5873825 (D. Minn. Nov. 20, 2012) ........................................................13

*Kruger et al. v. Novant Health, Inc.*,
131 F.Supp.3d 470 (M.D.N.C. 2015) ....................................................................14

*Larson et al. v. Allina Health System*, *et al.*,
350 F.Supp.3d 780 (D. Minn. 2018).....................................................................13

*Luevano v. Wal-Mart Stores, Inc.*,
722 F.3d 1014 (7th Cir. 2013) .............................................................................31

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ..........................................................................*Passim*

*McCool v. AHS Mgmt. Co.*,
2021 WL 826756 (M.D. Tenn. Mar. 4, 2021) .......................................... 14, 29, 30

*McGowan v. Barnabas Health, Inc.*,
2021 WL 1399870 (D.N.J. April 13, 2021)...........................................................13

*McNeilly v. Spectrum Health Sys.*,
No. 1:20-cv-00870-PLM-PJG (W.D. Mich. July 16, 2021)............................. 13, 21

*Miller v. AutoZone, Inc.*,
2020 WL6479564 (W.D. Tenn. Sept. 18, 2020)............................................. 14, 21

*Moitoso et al. v. FMR, et al.*,
451 F.Supp.3d 189 (D.Mass. 2020) ............................................................... 10, 27

viii

*Moore et al. v. Humana, Inc. et al.*,
No. 3:21-cv-00232-RG. (W.D.Ky. Mar. 31, 2022) ........................................... 20, 21

*Morin v. Essentia Health*,
No. 16-cv-4397, 2017 WL 4083133 (D. Minn. Sept. 13, 2017) ............................13

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
406 F.3d 1052 (8th Cir. 2005) ....................................................................................31

*Nicolas v. Trustees of Princeton Univ.*,
No. 17- 3695, 2017 WL 4455897 (D.N.J. Sept. 25, 2017)............................... 14, 29

*Nunez v. B. Braun Medical, Inc.*,
No. 5:20-cv-04195-EGS (E.D. Pa. June 4, 2021)....................................................13

*Omaha Indian Tribe v. Tract I – Blackbird Bend Area*,
933 F.2d 1462 (8th Cir. 1991) ..................................................................................31

*In re Omnicom ERISA Litig.*,
2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) ..........................................................13

*Parmer, et al. v. Land O'Lakes, Inc., et al.*,
2021 WL 464382 (D. Minn. Feb 9, 2021) ...............................................................13

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)......................................................................................16

*Peterson, et al. v. Insurance Serv. Offices, Inc., et al.*,
2021 WL 1382168 (D.N.J. April 13, 2021) .............................................................13

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
2020 WL 1531870 (E.D. Pa. March 31, 2020)................................................. 14, 29

*In re Prime Healthcare ERISA Litig.*,
2021 WL 3076649 (C.D. Cal. July 16, 2021)..........................................................13

*In re Quest Diagnostics Inc. ERISA Litig.*,
2021 WL 1783274 (D.N.J. May 4, 2021) ................................................................13

Appellate Case: 23-2501    Page: 10    Date Filed: 09/18/2023 Entry ID: 5317328

*Reinholdson v. Minn.*,
2001 WL 34660104 (D. Minn. Oct. 26, 2001) ......................................................31

*Rodriguez et al. v. Hy-Vee,Inc.* et al.,
No. 22-cv-00072-SHLHCA, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022). 13, 24

*Rohan v. Saint Luke's Health System, Inc.*,
2020 WL 8410451 (W.D. Mo. June 22, 2020) ......................................................13

*Rosenkranz v. Altru Health Sys.*,
No. 3:20-CV-168, 2021 WL 5868960 (D.N.D. Dec. 10, 2021) ...................... 13, 30

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and
Northwest Indiana*,
786 F.3d 510 (7th Cir. 2015) ...............................................................................31

*Sacerdote v. New York Univ.*,
9 F.4th 95, (2d Cir. 2021) ....................................................................................13

*Schriener v. Quicken Loans, Inc.*,
774 F.3d 442 (8th Cir. 2014) ...............................................................................15

*Schultz et al. v. Edward Jones*,
2018 WL 1508906 (E.D.Mo. Mar. 27, 2018) ......................................................13

*Seibert v. Nokia of Am. Corp.*,
No. 21 CV 20478, 2023 WL 5035026 (D.N.J. Aug. 8, 2023) ...............................13

*Silva v. Evonik Corp.*,
2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) ................................. 28, 29

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) ......................................................................... 19, 20

*Sweda v. Univ. of Pa.*,
923 F.3d 320 (3d Cir. 2019) .............................................................. 15 ,16, 18, 26

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) .............................................................................................17

Appellate Case: 23-2501     Page: 11     Date Filed: 09/18/2023 Entry ID: 5317328

*Tracey et al. v. MIT*,
2017 WL 4478239 (D.Mass. Oct. 4, 2017) ............................................................14

*Troudt v. Oracle Corp.*,
2017 WL 1100876 (D. Col. Mar. 22, 2017) ...........................................................14

*Wildman, et al. v. Am. Century Serv., LLC., et al.*,
237 F. Supp. 3d 902 (W.D. Mo. 2017) ...................................................................13

*Williams v. Centerra Group, LLC*,
2021 WL 4227384 (D.S.C. Sept. 16, 2021)............................................................13

*Williams v. Town of Okoboji*,
606 F.2d 812 (8th Cir. 1979) ................................................................... 15, 31, 33

**Other Sources**

The Employee Retirement Income Security Act of 1974................................*Passim*

Appellate Case: 23-2501     Page: 12     Date Filed: 09/18/2023 Entry ID: 5317328

# JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Missouri had federal question jurisdiction under 28 U.S.C. § 1331 and subject matter jurisdiction under 29 U.S.C. § 1132(e)(1) and (f). The venue was proper because Defendants are headquartered and transact business in the District, reside in the District, and/or have significant contacts with the District.

The United States Court of Appeals for the Eighth Circuit has jurisdiction over this appeal under 28 U.S.C. § 1291 because it is an appeal from a May 23, 2023 Order and Judgment by the District Court. (V.3, App.797; R. Doc. 70, at 1.) Plaintiffs timely filed a notice of appeal on June 21, 2023. (V.3, App.798; R. Doc. 72, at 1.)

# STATEMENT OF THE ISSUES ON APPEAL

1. Whether the District Court erred in determining the Amended Complaint failed to plead adequately Defendants breached their fiduciary duties under ERISA by failing to monitor the Plan's excessive RKA fees at the expense of the Plan's participants. (V.3, App.794-797; R. Doc. 70, at 1; Transcript of Oral Argument at 34-36 (Barrett v. O'Reilly Inc. (May 23, 2023) (No. 22-3111-CV-S-BCW)[1])

---

[1] The Transcript of Oral Argument before the district court on May 23, 2023 regarding Defendants' Motion to Dismiss will be abbreviated as "TR".

1

Review is *de novo*. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020).

2.    Whether the District Court erred in determining the Amended Complaint failed to plead adequately benchmarks for assessing the prudence of the challenged RKA fees. (V.3, App.794-797; R. Doc. 70, at 1; TR at 34-36.)

Review is *de novo*. *Davis*, 960 F.3d at 482.

3.    Whether the District Court erred in determining the Amended Complaint failed to plead adequately Defendants breached their fiduciary duties under ERISA by failing to monitor the Plan's fiduciaries. (V.3, App.794-797; R. Doc. 70, at 1; TR at 34-36.)

Review is de novo. *Davis*, 960 F.3d at 482.

4.    Whether the District Court erred in dismissing the Complaint with prejudice without providing the opportunity for Plaintiffs to seek leave to file a second amended complaint pursuant to FED. R. CIV. P. 15(a)(2). (V.3, App.794-797; R. Doc. 70, at 1; TR at 34-36.)

Review is de novo. *Davis*, 960 F.3d at 482.

## STATEMENT OF THE CASE

This case concerns the failure of Defendants, each of whom served as a Plan fiduciary, to protect the interests of the Plan and its participants and their beneficiaries in violation of Defendants' fiduciary obligations under ERISA. The

2

Defendant-fiduciaries saddled the Plan – one of the largest plans in the country with over $1 billion in assets – with excessive recordkeeping fees when Defendants should have used the Plan's size and substantial bargaining power to negotiate and obtain some of the best pricing available in the market for Plan services. ERISA's duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

## I.    Procedural History

Plaintiffs filed their Complaint on May 2, 2022. (V.3, App.806; Dkt. Sht. at 6.) On July 19, 2022, Defendants filed their Motion to Dismiss Plaintiffs' Complaint. (V.3, App.808; Dkt. Sht. at 8.) On August 12, 2022, Plaintiffs filed their Amended Complaint. (V.3, App.809; Dkt. Sht. at 9.) On September 2, 2022, Defendants filed their Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim along with a supporting brief. (V.3, App.809-810; Dkt. Sht. at 9-10.) On September 23, 2022, Plaintiffs filed their Suggestions in Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim. (V.3, App.811; Dkt. Sht. at 11.) On October 7, 2022, Defendants filed their Reply Suggestions in support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint for Failure to State a Claim. (V.3, App.811; Dkt. Sht. at 11.) After briefing was

3

complete, Plaintiffs and Defendants both filed multiple Notices of Supplemental Authorities. (V.3, App.811-815; Dkt. Sht. at 11-15.) On May 23, 2023, the district court held oral argument on Defendants' Motion to Dismiss the Amended Complaint where the district court Granted Defendants' Motion to Dismiss the Amended Complaint with Prejudice on the record. (V.3, App.815; Dkt. Sht. at 15.) The same day, on May 23, 2023, the Court entered a judgment in favor of Defendants against the Plaintiffs. (V.3, App.815; Dkt. Sht. at 15.) On June 21, 2023, Plaintiffs filed their Notice of Appeal. (V.3, App.815; Dkt. Sht. at 15.).

## II.    Statement of Facts

The Complaint asserts two claims for relief with subparts.  The First Claim for Relief alleges that the Committee Defendants breached their fiduciary duty of prudence by failing to manage the Plan's assets prudently which resulted in saddling the Plan and its participants with excessive Plan recordkeeping and administration (defined above as "RKA") costs. ERISA Section 404(a), 29 U.S.C. § 1104(a).  The Second Claim for Relief alleges O'Reilly and the Board Defendants failed to adequately monitor the Plan's other fiduciaries pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).

### A. Overview of the Plan

At all times during the Class Period, the Plan had at least $820 million dollars in assets under management.  (V.1 App.003; R. Doc. 24, at ¶ 9.)  As of 2020, the

Appellate Case: 23-2501     Page: 16     Date Filed: 09/18/2023 Entry ID: 5317328

Plan had over 53,000 participants and over $1.19 billion dollars in assets under management making it eligible for some of the lowest fees on the market. (V.1, App.031; R. Doc. 24, at ¶ 98.)

### B. The Totality of the Circumstances Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner

In an attempt to discover the details of the Plan's mismanagement, on February 18, 2022, Plaintiffs wrote to O'Reilly requesting, *inter alia*, meeting minutes from the Committee. (V.1, App.018; R. Doc. 24, at ¶ 59.) O'Reilly refused to acknowledge whether or not meeting minutes existed and stated, however, that even if they did exist, O'Reilly would refuse to provide them. *Id.* Reviewing meeting minutes, when they exist, is the bare minimum needed to peek into a fiduciary's monitoring process, but in most cases, even that is not enough. (V.1, App.003; R. Doc. 24, at ¶ 60.)

During the Class Period, the expense ratios for the funds in the Plan were anywhere from ***143%*** (in the case of T. Rowe Price QM US Small-Cap Gr Eq) to ***159%*** (in the case of American Beacon Small Cp Val Inst) above the ICI Median. (V.1, App.020; R. Doc. 24, at ¶ 67.) The high cost of the Plan's funds is also evident when comparing the Plan's funds to the average fees of funds in similarly-sized plans. (V.1, App.020-021; R. Doc. 24, at ¶¶ 67-68.) It is unlikely the Defendants engaged in a prudent process from 2016 through 2020 since the Plan contained at

5

least ten funds that had excessive expense ratios when compared to their peers from 2016 to 2020. (V.1, App.021; R. Doc. 24, at ¶ 69.)

### 1. The Plan's Total Plan Costs are Much Higher than Those of Its Peers

Another indication that the Plan was poorly run and lacked a prudent process for selecting and monitoring the Plan's investments is that, as of 2020, it had a TPC of more than .60%, or, in other words, more than ***172%*** higher than the average. (V.1, App.023; R. Doc. 24, at ¶ 75.) Defendants could not have utilized a prudent process which resulted with the Plan paying a total plan cost 172% higher than average. (V.1, App.023; R. Doc. 24, at ¶ 76.)

### 2. The Plan's Recordkeeping and Administrative Costs Were Excessive During the Class Period

Another clear indication of Defendants' imprudent fee monitoring process was the excessive RKA fees Plan participants were required to pay during the Class Period. (V.1, App.023; R. Doc. 24, at ¶ 77.) All national recordkeepers have the capability to provide the same range of RKA services at very little cost to all large defined contribution plans, including those much smaller than the Plan. (V.1, App.025; R. Doc. 24, at ¶ 82.) Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee. *Id.*

6

The Plan's recordkeeper during the Class Period is/was T. Rowe Price. (V.1, App.028; R. Doc. 24, at ¶ 92.) During the Class Period, the Plan charged the following per participant RKA fees:

|  | Participants | Direct Comp | Indirect Comp | Forfeitures | Total | $PP |
|---|---|---|---|---|---|---|
| **2020** | 53,561 | $2,609,734 | $48,714 | -$4,000 | $2,654,448 | $49.56 |
| **2019** | 52,426 | $2,607,101 | $87,176 | -$27,000 | $2,667,277 | $50.88 |
| **2018** | 49,782 | $2,301,452 | $81,538 | -$11,000 | $2,371,990 | $47.65 |
| **2017** | 51,646 | $2,474,032 | $774,140 | -$85,000 | $3,163,172 | $61.25 |
| **2016** | 51,084 | $4,026,016 | $603,131 | -$163,000 | $4,466,147 | $87.43 |

(V.1, App.027-28; R. Doc. 24, at ¶ 90.)

The above fees were significantly above market rates when benchmarked against similar plans. Looking at RKA costs for other plans of a similar size shows that the Plan was paying higher RKA fees than its peers – an indication the Plan's fiduciaries failed to appreciate the prevailing circumstances surrounding RKA fees. (V.1, App.028-031; R. Doc. 24, at ¶¶ 93-97.) As demonstrated in the chart below, RKA fees for other plans with more than 15,000 participants as of 2018 shows that the Plan was paying much higher RKA fees than its peers:

| Plan Name | Number of Participants | Assets Under Management | RKA Costs on Per-Participant Basis[2] | Record-keeper |
|---|---|---|---|---|
| **O'Reilly Automotive, Inc. Profit Sharing and Savings Plan** | **53,561 (2020)** | **$1,193,400,000 (2020)** | **$49.56** | **T.Rowe** |
| Fedex Office and Print Services, Inc. 401(k) Retirement Savings Plan | 17,652 | $770,290,165 | $30 | Vanguard |
| Pilgrim's Pride Retirement Savings Plan | 18,356 | $321,945,688 | $26 | Great-West |
| JBS 401(k) Savings Plan | 19,420 | $374,330,167 | $25 | Great-West |
| Sanofi U.S. Group Savings Plan | 24,097 | $5,522,720,874 | **$23** | T.Rowe |
| Danaher Corporation & Subsidiaries Savings Plan | 35,757 | $4,565,702,706 | **$28** | Fidelity |
| Deseret 401(k) Plan | 34,357 | $3,381,868,127 | **$25** | Great-West |
| Publicis Benefits Connection 401K Plan | 42,316 | $2,547,763,175 | **$28** | Fidelity |
| Kaiser Permanente Supplemental Savings and Retirement Plan | 47,358 | $3,103,524,321 | **$27** | Vanguard |

(V.1, App.029-030; R. Doc. 24, at ¶ 96.)

---

[2] In order to keep this comparator analysis consistent with the O'Reilly analysis above, RKA costs in the chart are derived, in the same manner as for O'Reilly, from each plans' Form 5500 filings. In addition, the comparator plans chosen are plans that have little to no revenue sharing and it's for this reason that revenue sharing from a plan's funds are not added to per participant amounts.

8

Additionally, from 2013 to 2019, there were plans ranging in size from 3,000 participants to over 18,000 participants that also paid less than the Plan. The below chart reflects fees paid by these plans for RKA costs:

| Year | Plan Name | Assets | Prtcpnts | Part Fee[12] | Recordkeeper |
|------|-----------|--------|----------|----------|--------------|
| 2013 | Wrigley Savings Plan | $446 million | 3,146 | $26.69 | Mercer HR Services, LLC |
| 2014 | Wrigley Savings Plan | $449 million | 3,132 | $29.21 | Mercer HR Services, LLC |
| 2014 | HealthFirst Profit Sharing 401(k) | $123 million | 3,732 | $32.74 | Verisight, Inc. |
| 2018 | Bausch Health Companies Inc. Retirement Savings Plan | $904,717,349 | 8,902 | $36 | Fidelity |
| 2018 | Children's Medical Center of Dallas Employee Savings Plan 403(b) | $349,335,673 | 9,356 | $36 | Fidelity |
| 2018 | Ralph Lauren 401(k) Plan | $552,586,935 | 9,389 | $31 | T.Rowe |
| 2018 | Vibra Healthcare Retirement Plan | $107,652,510 | 9,750 | $28 | Great-West |
| 2018 | Republic National 401(k) | $671,989,839 | 9,922 | $33 | Great-West |
| 2018 | Southern California Permanente Medical Group Tax Savings Retirement Plan | $773,795,904 | 10,770 | $31 | Vanguard |
| 2019 | Pacific Architects and Engineers, LLC 401(k) Savings Plan | $435,391,716 | 14,698 | $23 | Fidelity |
| 2019 | First American Financial | $1,791,281,396 | 15,246 | $35 | Fidelity |

Appellate Case: 23-2501    Page: 21    Date Filed: 09/18/2023 Entry ID: 5317328

| Year | Plan Name | Assets | Prtcpnts | Part Fee[12] | Recordkeeper |
|---|---|---|---|---|---|
| | Corporation 401(K) Savings Plan | | | | |

(V.1, App.030-031; R. Doc. 24, at ¶ 97.)

Furthermore, In a recent lawsuit where Fidelity's multi-billion dollar plan with over 50,000 (fifty thousand) participants like the Plan was sued, the "parties [] stipulated that if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from $14-$21 per person per year over the class period, and that the recordkeeping services provided by Fidelity to this Plan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper." *Moitoso et al. v. FMR, et al.*, 451 F.Supp.3d 189, 214 (D.Mass. 2020). (V.1, App.028; R. Doc. 24, at ¶ 93.)

Thus, the Plan, with over 53,000 participants and over $1.19 billion dollars in assets in 2020, should have been able to negotiate RKA costs ranging from $14 per participant to the mid $20 range from the beginning of the Class Period to the present. (V.1, App.031; R. Doc. 24, at ¶ 98.)

A plan's fiduciaries must remain informed about overall trends in the marketplace regarding the fees being paid by other plans by conducting a Request for Proposal ("RFP") in a prudent manner to determine if RKA expenses appear high in relation to the general marketplace. (V.1, App.027; R. Doc. 24, at ¶ 88.) Because the Plan paid yearly amounts in recordkeeping fees that were well above industry

10

standards each year over the Class Period, there is little to suggest that Defendants conducted an appropriate RFP at reasonable intervals – or certainly at any time prior to 2016 through the present - to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers given that the market for recordkeeping is highly competitive, with many vendors equally capable of providing a high-level service. (V.1, App.027; R. Doc. 24, at ¶ 89.)

Given the size of the Plan's assets during the Class Period and total number of participants, in addition to the general trend towards lower RKA expenses in the marketplace as a whole, the Plan could have obtained RKA services that were comparable to or superior to the typical services provided by the Plan's recordkeeper at a lower cost. (V.1, App.031; R. Doc. 24, at ¶ 99.)

## III.    The District Court's Dismissal of the Complaint

The District Court Granted Defendants' motion to dismiss and concluded on the record, "I think consistent with the case law that both parties have articulated to the Court, that [the Plaintiffs] have failed to show a meaningful benchmark." (V.3, App.795; TR at 35.) The court further denied Plaintiffs the opportunity to amend the pleadings. The court stated, "I think the Eighth Circuit said how these matters specifically could be pled, and which would clear the hurdle of 12(b)(6) dismissal. And I think the Plaintiff (sic) in this case, as the Court has articulated has failed to

11

plead that meaningful benchmark. And so any motion, oral motion for leave to amend will be denied." (V.3, App.795; TR at 35.)

## SUMMARY OF THE ARGUMENT

Plaintiffs brought this action pursuant to ERISA on behalf of participants in the Plan (defined above) during the putative Class Period (February 22, 2016 through the date of judgment). Fiduciaries must act "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A), with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B). These twin fiduciary duties are "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). As such, Defendants were required to ensure that the Plan paid no more than reasonable compensation for any of the recordkeeping and administrative services provided to the Plan and ensure the Plan was administered in accordance with the terms of ERISA.

Here, Defendants breached their fiduciary duties by saddling the Plan and its participants with exorbitantly high fees for the Plan's recordkeeping and administrative services. The Amended Complaint alleges the same type of circumstantial facts to support a plausible claim for excessive recordkeeping costs in accordance with the pleading requirements of the Eighth Circuit. The

12

overwhelming majority of district courts within the Eighth Circuit[3] and across the

nation[4] that have considered analogous excessive recordkeeping fee claims as

---

[3] *See, e.g. Rodriguez et al. v. Hy-Vee,Inc.* et al., No. 22-cv-00072-SHLHCA, 2022 WL 16648825, at *11–12 (S.D. Iowa Oct. 21, 2022); *See Rosenkranz v. Altru Health Sys.*, No. 3:20-CV-168, 2021 WL 5868960, at *12 (D.N.D. Dec. 10, 2021) *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382, at *9 (D. Minn. Feb 9, 2021); *Rohan v. Saint Luke's Health System, Inc.*, 2020 WL 8410451, at *6 (W.D. Mo. June 22, 2020) (same); *Larson et al. v. Allina Health System*, *et al.*, 350 F.Supp.3d 780 (D. Minn. 2018); *Morin v. Essentia Health*, No. 16-cv-4397, 2017 WL 4083133, at * 12 (D. Minn. Sept. 13, 2017); *Schultz et al. v. Edward Jones*, 2018 WL 1508906, a * 3 (E.D.Mo. Mar. 27, 2018) (same); *Wildman, et al. v. Am. Century Serv., LLC., et al.*, 237 F. Supp. 3d 902 (W.D. Mo. 2017) (same); *Krueger et al. v. Ameriprise Financial, Inc.*, 2012 WL 5873825 (D. Minn. Nov. 20, 2012).

[4] *See Brown v. MITRE Corp.*, No. 22-CV-10976-DJC, 2023 WL 2383772, at *6 (D. Mass. Mar. 6, 2023) (upholding excessive recordkeeping claims); *Seibert v. Nokia of Am. Corp.*, 2023 WL 5035026, at *12 (D.N.J. Aug. 8, 2023); *See Sacerdote v. New York Univ.*, 9 F.4th 95, at *119-120 (2d Cir. 2021) (upholding *inter alia* excessive recordkeeping fee claim); *Williams v. Centerra Group, LLC*, 2021 WL 4227384, at *9 (D.S.C. Sept. 16, 2021) (same); *Allison v. L Brands, Inc.*, 2021 WL 4224729, at *9 (S.D. Ohio Sept. 16, 2021) (same); *Garcia v. Alticor, Inc.*, No. 1:20-cv-01078-PLM-PJG (ECF No. 22), at *15-16 (W.D. Mich. Aug. 9, 2021) (same); *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *15 (S.D.N.Y. Aug. 2, 2021) (same); *In re Biogen ERISA Litig.*, 2021 WL 3116331, at *9 (D. Mass. July 22, 2021) (same); *McNeilly v. Spectrum Health Sys.*, No. 1:20-cv-00870-PLM-PJG (ECF No. 21), at *15-17 (W.D. Mich. July 16, 2021) (same); *In re Prime Healthcare ERISA Litig.*, 2021 WL 3076649, at *4 (C.D. Cal. July 16, 2021) (same); *Bilello v. Estee Lauder, Inc., et al.*, No. 1:20-cv-04770-JMF (S.D.N.Y., June 7, 2021) (same); *Nunez v. B. Braun Medical, Inc.*, No. 5:20-cv-04195-EGS (ECF No. 49) (E.D. Pa. June 4, 2021) (same); *In re Quest Diagnostics Inc. ERISA Litig.*, 2021 WL 1783274, at *4 (D.N.J. May 4, 2021) (same); *Blackmon v. Zachry Holdings, Inc. et al.*, 2021 WL 2190907, at *6-7 (W.D. Tex. Apr. 22, 2021) (same); *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *6 (D.N.J. April 13, 2021) (same); *Peterson, et al. v. Insurance Serv. Offices, Inc., et al.*, 2021 WL 1382168, at *5 (D.N.J. April 13, 2021) (same); *Khan v. PTC, Inc.*, No. 1:20-cv-11710-WGY (ECF No. 24) (D. Mass. April 6, 2021) (same); *Kendall et al v. Pharmaceutical Product Development, LLC*, 2021 WL 1231415, at *11 (E.D.Pa. Mar. 31, 2020) (same); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579, at *9-11 (E.D. Mich. March 31, 2021) (same);

alleged by Plaintiffs here have permitted the claims to proceed into discovery. Despite Plaintiff's well pled allegations, the district court dismissed Plaintiff's Amended Complaint because Plaintiffs' "failed to show a meaningful benchmark." (V.3, App.795; TR at 35.)

Although the court did not make it clear in its oral decision, it is clear from the transcript of the oral argument that the court relied on *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 283 (8th Cir. 2022). This, however, was improper. The Eighth Circuit held in *Matousek,* "[T]he way to plausibly plead a claim of this type [excessive RKA fees] is to identify similar plans offering the same services for less. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 579–80 (7th Cir. 2022); *see*

---

*McCool v. AHS Management Company, Inc.*, 2021 WL 826756, \*5 (M.D. Tenn. March 4, 2021) (same); *Miller v. AutoZone, Inc.,* 2020 WL6479564, at \*11 (W.D. Tenn. Sept. 18, 2020) (same); *Falberg v. Goldman Sachs Group, Inc.,* 2020 WL 3893285, at \* 11 (S.D.N.Y. July 9, 2020) (same); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at \*10-11 (S.D. Cal. June 24, 2020) (same); *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870, at \*5-6 (E.D.Pa. Mar. 31, 2020) (same); *Disselkamp, et al. v. Norton Healthcare, Inc. et al.*, 2019 WL 3536038, at \* 9-10 (W.D. Ky. Aug. 2, 2019) (same); *Feinberg v. T.Rowe Price Group, Inc., et al.*, 2018 WL 3970470, at \* 7 (D. Md. Aug. 20, 2018) (same); *Cassell v. Vanderbilt*, 285 F.Supp.3d 1056, 1064 (M.D. Tenn. 2018) (same); *Tracey et al. v. MIT*, 2017 WL 4478239, \* 3 (D.Mass. Oct. 4, 2017) (same); *Nicolas v. Trustees of Princeton Univ.*, 2017 WL 4455897, at \*4 (D.N.J. Sept. 25, 2017) (same); *Henderson v. Emory Univ.*, 252 F.Supp.3d 1344, 1353 (N.D. Ga. May 10, 2017) (same); *Johnson v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F.Supp.3d 460, 466 (N.D. Cal. 2017) (same); *Bell v. Pension Committee of ATH Holding Company, LLC*, 2017 WL 1091248, at \*4-5 (S.D. Ind. Mar. 23, 2017) (same); *Troudt v. Oracle Corp*., 2017 WL 1100876, at n. 4 (D. Col. Mar. 22, 2017) (same); *Kruger et al. v. Novant Health, Inc.*,131 F.Supp.3d 470, 479 (M.D.N.C. 2015) (same).

14

*also Sweda v. Univ. of Pa.*, 923 F.3d 320, 330 (3d Cir. 2019) (holding that the plaintiffs plausibly alleged a breach-of-fiduciary-duty claim when the plan spent millions more than "similar plans" paid "for the same services")." *Matousek*, 51 F.4th 274 at 279. Here, that's exactly what the plaintiffs alleged in their Amended Complaint.

Furthermore, the District Court's dismissal of the Plaintiffs' Amended Complaint without providing leave to amend demonstrates a clear abuse of discretion and was thus in error. Given that this Court has held that district courts should grant leave to amend "liberally when 'justice so requires,'" the district court's dismissal of Plaintiffs' Amended Complaint without providing leave to amend demonstrates a clear abuse of discretion. *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995) (quoting *Williams v. Town of Okoboji*, 606 F.2d 812, 814 (8th Cir. 1979)).

## **STANDARD OF REVIEW**

This Court reviews a district court's dismissal order *de novo*. *Adams v. Am. Family Mut. Ins. Co.*, 813 F.3d 1151, 1154 (8th Cir. 2016) (review of district court's Rule 12(b)(6) dismissal is *de novo*).

The Court "accept[s] the well-pleaded allegations in the complaint as true and draw[s] all reasonable inferences in favor of [the plaintiff]." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). To state a claim for breach of

15

fiduciary duty, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594. "To survive a motion to dismiss, a complaint must contain 'sufficient factual matter' to state a facially plausible claim for relief." *Davis*, 960 F.3d at 482 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

"An ERISA claim alleging an imprudent investment process can survive a motion to dismiss '[e]ven when the alleged facts do not 'directly address [ ] the process by which the Plan was managed,'' because a court can infer a flawed process from circumstantial factual allegations." *Karg v. Transamerica Corp.*, 2019 WL 3938471, at * 5 (N.D. Iowa Aug. 20, 2019) quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (quoting *Braden*, 588 F.3d at 596) (alteration in original). Thus, in cases alleging imprudent fiduciary process, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party." *Braden*, 588 F.3d at 597.

The Supreme Court's recent decision in *Hughes v. Northwestern Univ.*, reinforces the above pleading standard. *Hughes* vacated a decision that was at odds with the Third and Eighth Circuit's decisions in *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320 (3d Cir. 2019) and *Davis, et al. v. Washington U.*, 960 F.3d 478 (8th Cir.

16

2020). *See* Br. for the United States as Amicus Curiae at 17, *Hughes v. Northwestern Univ.*, No. 19-1401 (May 25, 2021) ("the decision below conflicts with decisions of the Third and Eighth Circuits, both of which have held that very similar complaints—alleging that defendants offered retail-class investment shares instead of available institutional-class shares, and paid excessive recordkeeping fees in universities' Section 403(b) plans— stated claims for relief under ERISA.")

Additionally, *Hughes* implores lower courts to apply the teachings of *Tibble v. Edison Int'l*, 575 U.S. 523, 529-530 (2015) where the Supreme Court "interpreted ERISA's duty of prudence in light of the common law of trusts and determined that 'a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones.'" *Hughes*, 2022 WL 199351, at *3-4 (quoting *Tibble*, 575 U.S. at 530). This duty includes controlling plan costs. (*See* App.002;  R. Doc. 24, at ¶ 4 (citing Uniform Prudent Investor Act, § 7.)) Lastly, the dicta in *Hughes* that lower courts must give consideration of "reasonable judgments a fiduciary may make" at best suggests the scope of "judgments" ought to be taken up at summary judgment.

The Eighth Circuit has held that in challenging excessive investment costs and excessive recordkeeping fees, a plaintiff must provide "a sound basis for comparison—a meaningful benchmark." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) (quoting *Davis*, 960 F.3d at 484). However, the Eighth

17

Circuit has also held that "there is no-size-fits-all approach" in alleging a meaningful benchmark. *Davis*, 960 F.3d at 484.

## ARGUMENT

**I.** **Plaintiffs Plausibly Alleged Defendants Implemented A Flawed Process For Monitoring the Plan's Administrative and Recordkeeping Fees**

**A.** **The District Court Erred In Holding that Defendants Failed to Allege a Meaningful Benchmark in Challenging Defendants' Excessive RKA Fees.**

The District Court dismissed Plaintiffs' Amended Complaint because the Plaintiffs failed to allege a "meaningful benchmark." However, Plaintiffs' Amended Complaint alleges the same benchmarks that are required in excessive RKA fee cases in the Eighth Circuit and in circuit courts throughout the county. The Eighth Circuit recently held, "[T]he way to plausibly plead a claim of this type [excessive RKA fees] is to identify similar plans offering the same services for less. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 579–80 (7th Cir. 2022); *see also Sweda v. Univ. of Pa.*, 923 F.3d 320, 330 (3d Cir. 2019) (holding that the plaintiffs plausibly alleged a breach-of-fiduciary-duty claim when the plan spent millions more than "similar plans" paid "for the same services")." *Matousek*, 51 F.4th 274 at 279.

In *Hughes v. Nw. Univ*, 63 F.4th 615 (7th Cir. 2023), on remand from the Supreme Court, the Seventh Circuit clarified its holding in *Albert* and what it means to allege "similar plans offering the same services for less". In *Hughes*, the Seventh

Circuit held that nearly identical allegations as alleged in the Amended Complaint properly allege a breach of the defendants' fiduciary duties in failing to monitor the plans excessive RKA fees.

One of the issues in *Hughes* was whether plaintiffs adequately plead that defendants violated the duty of prudence by failing to monitor and control the fees they paid for recordkeeping. *Id*. at The Seventh Circuit discussed at length the pleading standard for the duty of prudence following the Supreme Court's decision in *Hughes*, 142 S. Ct. 737 (2022). *Id.* at 623-631. The plaintiffs in *Hughes* pled that the plaintiffs were subject to unreasonable recordkeeping fees. *Id.* In particular, the plaintiffs "assert[ed] that $35 was a reasonable per participant fee '[b]based on the Plans' features, the nature of the administrative services provided by the Plans' recordkeepers, the number of participants in the Plans…, and the recordkeeping market." *Id.*

The Seventh Circuit then discussed its previous holding in *Albert v. Oshkosh Corp.* and its interpretation of *Smith v. CommonSpirit Health,* 37 F.4th 1160 (6th Cir. 2022) and found that the plaintiffs' allegations satisfied the holdings of *Albert* and *Smith. Hughes* F.4th at 631-632.  The Seventh Circuit noted that in *Albert*, they affirmed dismissal of recordkeeping claims where "the plaintiff pleaded that the relevant ERISA plan paid an average of $87 per participant in recordkeeping fees despite a reasonable fee being $40 per participant based on what comparator funds

19

paid." *Id.* The court noted that *Albert* "emphasized the lack of 'allegations as to the quality or type of recordkeeping services the comparator plans provided.'" *Id*. at 631. The Seventh Circuit then distinguished the plaintiff's claims in *Hughes* from *Albert* and held that the plaintiffs adequately plead that the recordkeeping fees were excessive relative to the services rendered. *Id.* at 632. The court stated the following:

> Unlike in *Albert*, plaintiffs here assert "[t]here are numerous recordkeepers in the marketplace who are *equally* capable of providing a high level of service to large defined contribution plans like the Plans." So, plaintiffs maintain that the quality or type of recordkeeping services provided by competitor providers are comparable to that provided by Fidelity and TIAA. **Plaintiffs also plead that because recordkeeping services are "commoditized ... recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plans."** In short, plaintiffs allege that recordkeeping services are fungible and that the market for them is highly competitive. Plaintiffs also contend that $35 per participant was a reasonable recordkeeping fee based on the services provided by existing recordkeepers and the Plans' features. **Unlike the plaintiffs in *CommonSpirit Health*, plaintiffs plead that the fees were excessive relative to the recordkeeping services rendered. *See* 37 F.4th at 1169.**

*Id.* (Emphasis added)

Here, the Plaintiffs easily satisfy the pleading requirement of *Albert* and *Smith* as clarified by the Seventh Circuit in *Hughes*.[5] Like in *Hughes*, here, Plaintiffs'

---

[5] Although *Hughes* is a Seventh Circuit opinion and *Smith* is a *Sixth* Circuit opinion, district courts in the Sixth Circuit are in line with *Hughes'* interpretation of *Smith* and have consistently upheld nearly identical recordkeeping claims. *See*, e.g, *Moore et al. v. Humana, Inc. et al*., No. 3:21-cv-00232-RG, slip op. (W.D.Ky. Mar. 31, 2022) (upholding allegations of excessive recordkeeping and administration costs

Amended Complaint alleges detailed lists of "the two types of essential recordkeeping services provided by all national recordkeepers for large plans with substantial bargaining power (like the Plan)." (V.1, App.024; R. Doc. 24, at ¶ 79.) Moreover, looking at the service codes from the Plan's Form 5500 shows that the Plan received the same type of services as the comparator plans alleged in the Amended Complaint. (V.1, App.029; R. Doc. 24, at ¶ 96.) The plaintiffs also allege in the SAC, "The cost of providing recordkeeping services often depends on the number of participants in a plan. Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee. Because recordkeeping expenses are driven by the number of

_____

where "Plaintiffs include a chart comparing similarly situated plans, including a comparison of number of participants, amount of assets, and recordkeeping fees paid."); *Moore et al. v. Humana*, No. 3:21-cv-232 (W.D. Ky. Dec. 2, 2022) (Order denying motion for reconsideration); *Garcia, et al., v. Alticor, Inc*., *et al.,* No. 1:20-cv-1078 (W.D. Mich. Aug. 23, 2022) (order denying motion for reconsideration); *McNeilly et al. v. Spectrum Health Systems, et al.,* No. 1:20-cv-870 (W.D. Mich. Dec. 20, 2022) (order denying motion for reconsideration); *Allison v. L Brands, Inc.,* 2021 WL 4224729, at *8 (S.D. Ohio Sept. 16, 2021) (upholding excessive fee claims); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Davis v. Magna Int'l of America, Inc.,* 2021 WL 1212579 (E.D. Mich. March 31, 2021); *Cassell v. Vanderbilt*, 285 F.Supp.3d 1056, 1061 (M.D. Tenn. 2018) (granting in part and denying in part defendants' motion to dismiss allegations of excessive fees); *Disselkamp, et al. v. Norton Healthcare, Inc. et al.,* 2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) (same); *Miller v. Autozone,* 2020 WL 6479564, at * 8-10 (W.D. Tenn. Sept. 18, 2020) (denying in toto motion to dismiss excessive fee claims).

21

participants in a plan, the vast majority of plans are charged on a per-participant basis." (V.1, App.025; R. Doc. 24, at ¶ 83.)

Plaintiffs' comparator plans constitute a proper comparison because, as alleged in the Amended Complaint, all large plans offer roughly the same base services. (V.1, App.024; R. Doc. 24, at ¶ 79.) Furthermore, all the comparator plans were selected based on the most important factor in determining recordkeeping costs – plan participant size. Here, all of the comparator plans were large plans with roughly the same size or less participants than in the Plan. (V.1, App.027-031, R. Doc. 24, at ¶¶ 90-99.) Furthermore, eight of the comparator plans were large plans from 2018 with over 15,000 participants. (V.1, App.029-030; R. Doc. 24, at ¶¶ 96.) This is significant because, as alleged in the Amended Complaint, recordkeeping expenses are driven by the number of participants in a plan. (V.1, App.025; R. Doc. 24, at ¶ 83.) Despite having more participants than about 13 comparator plans, the Plan's recordkeeping costs were significantly higher than the comparator plans. (V.1, App.027-031; R. Doc. 24, at ¶¶ 96-99.) From 2016-2020, the Plan's per participant recordkeeping fees ranged from $47.64-$87.43, whereas the per participant recordkeeping fees for the comparator plans ranged from $23-$30 in the eight large plans, and $23-36 in the eleven plans ranging in size from 3,000 participants to just over 15,000. *Id.* A prudent fiduciary would have been aware of

Appellate Case: 23-2501     Page: 34     Date Filed: 09/18/2023 Entry ID: 5317328

the market rate for fees, recognized the increase in Plan fees as excessive, and leveraged the large plans size to negotiate a reduction in fees.

*Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) does not hold differently. In *Matousek*, plaintiffs alleged the Plan's recordkeeper, Merrill Lynch, charged upwards of "between $326 and $526 per plan participant" when "no more than $100 per participant is reasonable for a plan with approximately $1 billion in total assets and 5,000 participants." *Matousek*, 51 F.4th at 278- 279. The court reviewed documents purportedly indicating that Merril Lynch provided much more than recordkeeping services to the plan which accounted for a bulk of its out-sized fees. These fees "appear[ed] to come from … investment advice for those with self-directed brokerage accounts; commissions for individual trades; and trading, loan-origination, returned-payment, and check-service fees." *Matousek*, 51 F.4th at 279.

The Plaintiffs in *Matousek* failed to state a claim for two general reasons. First, plaintiffs' comparisons didn't account for the fact that Merril Lynch's fees included fees for services other than recordkeeping and administration, which is not an issue here because there are no facts indicating the Plan's recordkeeper provided services other than recordkeeping and administration. *Matousek*, 51 F.4th at 279 (using participant-disclosure forms to calculate fees of $32 to $48 per participant for "basic recordkeeping services"). Second, the *Matousek* plaintiffs **only** compared the plan at issue to industry wide averages, whereas here, plaintiffs allege per participant

23

recordkeeping fees for similarly situated comparator plans. *Matousek*, 51 F.4th at 279, (V.1, App.027-031; R. Doc. 24, at ¶¶ 90-99.) After determining Merrill Lynch paid $32 to $48 per participant for recordkeeping, the Court then compared the fees for those services to the industry-wide benchmarks proffered by the plaintiffs, concluding that the plan in question "compare[d] favorably" to the benchmarks. See *id.*; *Rodriguez et al. v. Hy-Vee, Inc.* et al., No. 22-cv-00072-SHLHCA, 2022 WL 16648825, at *11–12 (S.D. Iowa Oct. 21, 2022) (applying Matousek and concluding that the defendants did not give the court "enough information to understand the difference (if there is one) in the scope of recordkeeping services provided in connection with the [plan] versus those provided in the proffered benchmarks").

As in *Rodriguez*, here, the Court has no basis at this stage "to doubt the plausibility" of Plaintiffs' allegations that there are "two types of essential recordkeeping services provided by all national recordkeepers for large plans with substantial bargaining power (like the Plan)" and that "the Plan could have obtained recordkeeping services that were comparable to or superior to the typical services provided by the Plan's recordkeeper at a lower cost." (V.1, App.023, R. Doc. 24, at ¶ 79; V.1, App.031, R. Doc. 24, at ¶ 99.) See *Rodriguez*, 2022 WL 16648825, at *12 (finding "no reason to doubt the plausibility of [the plaintiffs'] allegation that 'all' recordkeepers in large 401(k) plans provide the same suite of recordkeeping services, and thus the [plan] paid too much") (citing *Davis*, 960 F.3d at 483); *Garnick*

24

*v. Wake Forest Univ. Baptist Med. Ctr.*, No. 21-cv-454, 2022 WL 4368188, at *8 (M.D.N.C. Sept. 21, 2022) (concluding that plaintiffs plausibly stated a claim of imprudence by alleging that plan had the leverage to bargain for more reasonable fees without utilizing revenue sharing).

Comparing the Plan's exorbitant RKA to the meaningful comparators alleged in the Amended Complaint evinces Defendants' failure to adhere to fiduciary standards of prudence. Therefore, the Plaintiffs' allegations satisfy the Eighth Circuit's requirement that Plaintiffs "identify similar plans offering the same services for less." *Matousek*, 51 F.4th 274 at 279. But just as important to note, Plaintiffs do not have access to recordkeeping agreements entered into by other plan fiduciaries because they are not publicly available. At oral argument, Defense counsel agreed that recordkeeping agreements are not publicly available. (*See* V.3, App.790; TR at 30 ("[Plaintiffs' Counsel] says I need a record-keeping fee contract. Well, he happened to pick something, I agree, you cant get publically (sic)").) Accordingly, any more detailed information regarding services performed by the Plan's recordkeepers are of the type that "tend systematically to be in the sole possession of defendants" prior to discovery. *Braden*, 588 F.3d at 598.

**B.  The Totality of the Circumstances as Alleged in the Amended Complaint Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner.**

25

In addition to the comparator plans, Plaintiffs allege several other allegations that, when taken as a whole, demonstrate that Defendants failed to adhere to a prudent process in monitoring their excessive RKA fees. When assessing whether Plaintiffs allege a breach of Defendants' fiduciary duties under ERISA, the court should take the Plaintiffs' "allegations as a whole" *Hughes*, 142 S. ct. at 739. A complaint should *not* be "parsed piece by piece to determine whether each allegation, in isolation, is plausible" since participants do not have direct evidence of how fiduciaries reached their decisions. *Sweda*, 923 F.3d at 331 (quoting *Braden*, 588 F.3d at 594).

Here, in addition to alleging the meaningful comparator plans that show the Defendants could have negotiated lower per participant recordkeeping fees, the Plaintiffs allege several other factors that demonstrate Defendants' failure to adhere to fiduciary standards of prudence. Plaintiffs allege that at least seven funds had excessive expense ratios when compared to their peers from 2016 to 2020. (V.1, App.020-021; R. Doc. 24, at ¶¶67-69.) Plaintiffs also allege the total Plan costs were much high than the average of its peers, alleging that the Plan paid a total plan cost of **172%** higher than average using the Investment Company Institute ("ICI") study from 2018. (V.1, App.022-023; R. Doc. 24, at ¶¶74-76.) Furthermore, because the Plan paid yearly amounts in recordkeeping fees that were well above industry standards each year over the Class Period, there is little to suggest that Defendants

conducted an appropriate Request for Proposal ("RFP") at reasonable intervals. (V.1, App.027; R. Doc. 24, at ¶89.) Lastly, in addition to using the comparator plans, plaintiffs submitted an example from a lawsuit where Fidelity's multi-billion dollar plan with tens of thousands of participants like the Plan was sued, and the "parties stipulated that if Fidelity were a third party negotiating this fee structure at arms-length, the value of services would range from $14-$21 per person per year over the class period, and that the recordkeeping services provided by Fidelity to this Plan are not more valuable than those received by other plans of over $1,000,000,000 in assets where Fidelity is the recordkeeper." *Moitoso et al. v. FMR, et al.*, 451 F.Supp.3d 189, 214 (D.Mass. 2020). (V.1, App.07; R. Doc. 24, at ¶93.) Here, the totality of the circumstances as alleged in the Amended Complaint clearly demonstrates that the Plan fiduciaries failed to administer the Plan in a prudent manner.

### i.    The ICI Chart is a Useful Measurement

The District Court rejected the usefulness of the Amended Complaint's utilization of median and average fee comparisons. (V.3, App.795; TR at 35.) The Amended allegations of the ICI studies is just one of the several benchmarks, that when considered together, infer Defendants' imprudent process. The median and average cost comparisons charts in the FAC highlight a glaring failure in the Plan fiduciaries' investment selection and monitoring process. The fact that some of the

27

Plan's funds had expense ratios that exceeded comparable funds by as much as **158%** in some instances, plausibly demonstrates imprudent conduct. (V.1, App.020; R. Doc. 24, at ¶89.) Furthermore, total plan cost of **172%** higher than average using the ICI study from 2018 also plausibly demonstrated imprudent conduct. (V.1, App.022-023; R. Doc. 24, at ¶¶74-76.) Using the ICI chart is appropriate because it uses an objective benchmark for measuring fee expenses: plan size. Had the Plan's fiduciaries faithfully executed their fiduciary duties, the expectation would be the expense ratios for the majority of the Plan's funds would be at or below the median and average prices similarly situated plans paid. Instead, the opposite was true and the Plan's fees were significantly above the median and average expenses to plausibly suggest something was amiss.

There is "no one-size-fits-all approach" when it comes to picking benchmarks. *Davis*, 960 F.3d at 484. Notwithstanding Defendants' criticism of the use of the ICI median and averages charts, several courts have upheld claims based in part on the chart. *Huang v. TriNet HR III, Inc.,* No. 8:20-cv-2293, 2022 WL 93571, (M.D. Fl. Jan. 10, 2022), at *1, 5-8 (upholding prudence claim when plaintiffs alleged "the expense ratios for many funds in the Plans greatly excessed the ICI Median"); *Silva v. Evonik Corp.,* 2020 U.S. Dist. LEXIS 250206, at *12 (D.N.J. Dec. 30, 2020) ("Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment

28

Company Institute and the fees of alleged comparators."); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 WL 1531870 at * 5 (E.D. Pa. March 31, 2020) ("[Plaintiffs] included three tables comparing investment options offered by the Plan to similar or identical lower-fee alternatives and comparing expense ratios to median fees in the same category); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at * 2 (S.D. Cal. June 24, 2020) ("the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses."); *see generally McCool*, 2021 WL 826756 (upholding allegations based on ICI median charts); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579, at * 7 (E.D. Mich. March 31, 2021) (court rejected defendants' challenges of the ICI study finding "[t]o the extent that Defendants argue the merits of Plaintiffs' comparisons, such arguments are premature in a motion to dismiss").

### ii. Whether Plaintiffs' Alleged Comparators are Meaningful Comparators for the Challenged Plan Funds is Not Suitable for Resolution at the Motion to Dismiss Stage

The District Court ultimately takes issue with Plaintiffs' choice of comparators, but the argument raises issues of fact that require assessment on a more developed record. *See Silva*, 2020 U.S. Dist. LEXIS 250206, at *13 (quoting *Nicolas v. Trustees of Princeton Univ.*, No. 17- 3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017)) (an inquiry into 'whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons' is a question of fact unsuitable for resolution on a

motion to dismiss.); *McCool*, 2021WL 826756, at *5 ("the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss"); *Cassell v. Vanderbilt Univ.*, 285 F.Supp.3d 1056, 1067 (M.D. Tenn. 2018) (same); *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same).

Therefore, this Court should reverse the District Court's decision granting Defendants-Appellees' motion to dismiss and remand this case to the District Court for further proceedings on the merits.

## II. The Complaint Alleges Sufficient Facts to State A Claim For Failure To Monitor

The District Court dismissed Plaintiffs' monitoring claim because the court dismissed the underlying imprudent management claim. (V.3, App.796; TR at 36.) This is of no moment, because, as argued above, Plaintiffs "have pleaded the underlying fiduciary breach necessary to support their failure to monitor claim." *Karg*, 2019 WL 3938471, at * 9. Plaintiffs' Complaint contains similar factual allegations against the Monitoring Defendants that have been upheld in analogous cases. (V.1, App.033-034; R. Doc. 24, at ¶¶ 108-114); *See Rosenkranz*, at *12 ("Because Plaintiffs have sufficiently stated a claim for breach of the fiduciary duty of prudence, the Court finds that Plaintiffs have also sufficiently pleaded the derivative failure to monitor claim against Altru."). Accordingly, Plaintiffs have stated a plausible claim for the failure to monitor.

30

### III. The District Court Erred In Dismissing Plaintiffs' Complaint Without Providing Plaintiffs the Opportunity to Seek Leave to Amend.

"If a responsive pleading has already been served, 'a party may amend the party's pleading only by leave of court…and leave shall be freely given when justice so requires.'" *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (citing Fed. R. Civ. P. 15(a)). This Court has held that district courts should grant leave to amend "liberally when 'justice so requires.'" *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995) (quoting *Williams v. Town of Okoboji*, 606 F.2d 812, 814 (8th Cir. 1979)). "Ordinarily, **a pleading dismissed pursuant to Rule 12 should be dismissed without prejudice**." *Reinholdson v. Minn.*, 2001 WL 34660104, at *1 (D. Minn. Oct. 26, 2001) (internal citations omitted) (permitting plaintiffs to file a second amended complaint).

In fact, "[d]ismissal with prejudice should be used sparingly because it is a drastic sanction." *Reinholdson*, 2001 WL 34660104, at *1 (citing *Omaha Indian Tribe v. Tract I – Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir. 1991)); *see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 518 (7th Cir. 2015) ("[i]n light of the presumption in favor of giving plaintiffs at least one opportunity to amend, *see, e.g.*, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013), denying a plaintiff that opportunity carries a high risk of being deemed an abuse of discretion."). This Court has promised, "[a]lthough the district court's decision to permit amendment is

31

discretionary, […] we will reverse a denial of such permission when the plaintiff has shown it can cure the lack of specificity." *Frey*, 44 F.3d at 672 (internal citations omitted).

Here, the district court's dismissal of Plaintiffs' Amended Complaint without providing leave to amend demonstrates a clear abuse of discretion. At oral argument, the court denied Plaintiffs' request for leave to amend for no other reason than because Plaintiffs failed to plead meaningful benchmarks. (V.3, App.795; TR at 35 ("I think the Plaintiff (sic) in this case, as the Court has articulated has failed to plead that meaningful benchmark. And so any motion, oral motion for leave to amend will be denied.").) This was the court's first time ruling on a motion to dismiss in this case. It is conceivable that Plaintiffs could have cured any deficiencies identified by the district court in an amended complaint, but the court did not give the Plaintiffs an opportunity to do so. Plaintiffs' counsel discussed at oral argument ways in which the Plaintiffs could use information obtained during discovery to add to the Amened Complaint to satisfy the district court's concerns with the Amended Complaint. (*See* V.3, App.793-794; TR at 32-33 ("I have identified how I think our case has meet the pleading standard. Your Honor has talked about all the ways that could meet it. Some of the ways were account statements which we got through discovery. Some of which are record-keeping agreements which we got through discovery. Which are what we used to submit the complaint. I would submit that if Your Honor's inclined

to dismiss the case, I do think we are allowed one more opportunity to amend the complaint to using what we've got in discovery to amend the complaint.").) Given that this Court has held that district courts should grant leave to amend "liberally when 'justice so requires,'" the district court's dismissal of Plaintiffs' Complaint without providing leave to amend demonstrates a clear abuse of discretion. *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995) (quoting *Williams v. Town of Okoboji*, 606 F.2d 812, 814 (8th Cir. 1979)).

<u>**CONCLUSION**</u>

For the forgoing reasons, Plaintiffs-Appellants respectfully request the Court reverse the District Court's decision granting Defendants-Appellees' motion to dismiss and remand this case to the District Court for further proceedings on the merits.

Dated: September 13, 2023          Respectfully submitted,

                                   **CAPOZZI ADLER, P.C.**


                                   */s/ Mark K. Gyandoh*
                                   Mark K. Gyandoh
                                   312 Old Lancaster Road
                                   Merion Station, PA 19066
                                   Tel: (610) 890-0200
                                   Email: markg@capozziadler.com

33

## CERTIFICATE OF COMPLIANCE

1.      I certify that this brief complies with the provisions of Fed.R.App.P. 28, 29, 31 and 32, as well as Eighth Circuit Rules 25A, 28A and 32A, and that this brief contains 8,345 words, excluding the parts of the brief exempted by Fed.R.App.P. (32)(a)(7).

2.      I certify that this brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P 32(2)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 14 point font.

3.  This document has been scanned for viruses and the brief is virus-free.


Dated: September 13, 2023                    */s/ Mark K. Gyandoh*

Appellate Case: 23-2501     Page: 46     Date Filed: 09/18/2023 Entry ID: 5317328

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 13, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 13, 2023                           */s/ Mark K. Gyandoh*

Appellate Case: 23-2501     Page: 47     Date Filed: 09/18/2023 Entry ID: 5317328