No. 23-2501

# United States Court of Appeals
## for the Eighth Circuit

ERICA BARRETT; KATHLEEN VINCENT; CONNIE ENDERLE; EDWARD Q. INGERSON, II; PENNY KENOYER; GILBERT ONTIVEROS,

*Plaintiffs-Appellants,*

v.

O'REILLY AUTOMOTIVE, INC.; THE BOARD OF DIRECTORS OF O'REILLY AUTOMOTIVE, INC.; O'REILLY AUTOMOTIVE 401(K) PLAN INVESTMENT COMMITTEE; JOHN DOES 1-30,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Western District of Missouri, Southern Division

**BRIEF OF DEFENDANTS-APPELLEES O'REILLY AUTOMOTIVE, INC., THE BOARD OF DIRECTORS OF O'REILLY AUTOMOTIVE, INC., O'REILLY AUTOMOTIVE 401(K) PLAN INVESTMENT COMMITTEE AND JOHN DOES 1-30**

Charles B. Cowherd
SPENCER FANE LLP
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone: 417-888-1000
ccowherd@spencerfane.com

James R. Carroll
Michael S. Hines
Mary E. Grinman
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone: 617-573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

*Counsel for Defendants-Appellees*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This appeal presents one question: did the District Court properly dismiss this Employee Retirement Income Security Act ("ERISA") putative class action with prejudice for failure to satisfy the "meaningful benchmark" pleading standard set forth by the Eighth Circuit. The answer is yes.

Plaintiffs allege that Defendants breached their ERISA fiduciary duties by failing to control the recordkeeping and administrative costs of the O'Reilly Automotive, Inc. Profit Sharing and Savings Plan (the "Plan") and by retaining certain investment options in the Plan that Plaintiffs contend were too expensive. In purported support of those allegations, Plaintiffs present cherry-picked cost-to-cost comparisons without providing any information about the types of services that the comparator plans received or the types of investments that comprise the comparator benchmarks. The Eighth Circuit has twice held that such out-of-context comparators are not meaningful benchmarks and therefore cannot support a claim upon which relief can be granted. Plaintiffs do not supply any argument for overruling this well-reasoned precedent, and the Court should therefore affirm the District Court's dismissal with prejudice.

Defendants respectfully request 15 minutes per side for oral argument.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant Federal Rule of Appellate Procedure Rule 26.1 and Local Rule 26.1A, Defendant-Appellee O'Reilly Automotive, Inc. hereby discloses that it is a publicly-held corporation, it has no parent company, and no publicly-held corporation owns more than 10% of O'Reilly Automotive, Inc.'s stock.

Appellate Case: 23-2501     Page: 3     Date Filed: 10/19/2023 Entry ID: 5327629

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE
AND REQUEST FOR ORAL ARGUMENT ...........................................i

CORPORATE DISCLOSURE STATEMENT............................... ii

TABLE OF AUTHORITIES................................................. vi

INTRODUCTION .............................................................1

STATEMENT OF THE ISSUES ...........................................3

STATEMENT OF THE CASE ..............................................4

I.  Legal Background ......................................................4

    A.  This Circuit's "Meaningful
    Benchmark" Pleading Standard .......................................5

    B.  Other Circuits Also Require
    Plaintiffs To Plead A "Meaningful
    Benchmark" In ERISA Breach Of Fiduciary Duty Cases ............8

II.  Factual Background ..................................................12

    A.  The Plan ...........................................................12

    B.  Plaintiffs' Allegations..........................................13

        1.  Recordkeeping Fee Allegations ...........................14

        2.  Investment Management Fee Allegations........................16

        3.  Total Plan Cost Allegations ...............................17

III.  Procedural Background ...........................................17

SUMMARY OF ARGUMENT .............................................19

iii

ARGUMENT ....................................................................................22

I.    Dismissal Of Count I Should Be Affirmed
Because Plaintiffs Failed To Plead Any Facts To
Support A Reasonable Inference Of Imprudent Conduct ...................24

    A.    Plaintiffs' Recordkeeping Fee
Allegations Do Not Provide A Meaningful
Benchmark From Which To Infer Imprudence ...........................24

        1.    Plaintiffs' Comparator Plans Fail To Provide A
Meaningful Benchmark To Plausibly State A Claim
That The Plan's Recordkeeping Fees Were Excessive ......25

        2.    Plaintiffs' Reliance On A Stipulation Filed
By A Different Recordkeeper In A Different Case
Is An Insufficient Comparator To Plead Imprudence ......31

        3.    Plaintiffs' Speculative Allegation That
Plan Fiduciaries May Not Have Conducted
A Request For Proposal Does Not State A Claim .............33

    B.    Plaintiffs Fail To Plead A Meaningful
Benchmark To Plausibly State A Claim That The
Plan's Investment Management Fees Were Too Expensive ......34

    C.    Plaintiffs Fail To Plead A Meaningful
Benchmark To Plausibly State A Claim
That The Total Plan Costs Were Too High ................................36

II.    The District Court Correctly Dismissed
Plaintiffs' Failure To Monitor Claim (Count II)
Because There Is No Underlying Fiduciary Breach ..............................37

III.    The District Court Did Not Err In
Dismissing The Amended Complaint With
Prejudice And Denying Leave To Amend For A Second Time ...........38

CONCLUSION ................................................................................41

Appellate Case: 23-2501    Page: 5    Date Filed: 10/19/2023    Entry ID: 5327629

CERTIFICATE OF COMPLIANCE ....................................................................43

CERTIFICATE OF SERVICE ...............................................................................44

v

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ...................................................................9, 12

*Allen v. Wells Fargo & Co.*,
  967 F.3d 767 (8th Cir. 2020)...................................................................4, 37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................22

*Bouvy v. Analog Devices, Inc.*,
  No. 19-CV-881 DMS (BLM),
  2020 WL 3448385 (S.D. Cal. June 24, 2020)............................................35

*Brown v. Medtronic, Inc.*,
  628 F.3d 451 (8th Cir. 2010)...................................................................4, 37

*Davis v. Magna International of America., Inc.*,
  No. 20-11060, 2021 WL 1212579 (E.D. Mich. Mar. 31, 2021) ............... 35

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ....................................................................................23

*Frey v. City of Herculaneum*,
  44 F.3d 667 (8th Cir. 1995).........................................................................40

*Huang v. TriNet HR, III, Inc.*,
  No. 8:20-CV-2293-VMC-TGW,
  2022 WL 93571 (M.D. Fla. Jan. 10, 2022) ................................................35

*Hughes v. Northwestern University*,
  595 U.S. 170 (2022) .........................................................................6, 7, 8, 10

Appellate Case: 23-2501     Page: 7     Date Filed: 10/19/2023 Entry ID: 5327629

*Hughes v. Northwestern University*,
  63 F.4th 615 (7th Cir. 2023) ................................................................*passim*

*Johnson v. PNC Financial Services Group, Inc.*,
  No. 2:20-CV-01493-CCW,
  2021 WL 3417843 (W.D. Pa. Aug. 3, 2021)..............................................32

*Matney, v. Barrick Gold of North America*,
  No. 22-4045, 2023 WL 5731996 (10th Cir. Sept. 6, 2023) ......10, 12, 33, 34

*Matousek v. MidAmerican Energy Co.*,
  51 F.4th 274 (8th Cir. 2022) ................................................................*passim*

*McCool v. AHS Management Co., Inc.*,
  No. 3:19-CV-01158, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021)..........35

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018)................................................................*passim*

*Misischia v. St. John's Mercy Health Systems*,
  457 F.3d 800 (8th Cir. 2006).........................................................................39

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical
  Centers Retirement Plan v. Morgan Stanley Investment Management
  Inc.*,
  712 F.3d 705 (2d Cir. 2013).........................................................................23

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
  No. CV 19-5738, 2020 WL 1531870 (E.D. Pa. Mar. 31, 2020)................35

*Reinholdson v. Minnesota*,
  No. CIV01-1650(RHK/JMM),
  2001 WL 34660104 (D. Minn. Oct. 26, 2001) ...........................................40

*Riley v. Olin Corp.*,
  No. 4:21-cv-01328-SRC,
  2022 WL 2208953 (E.D. Mo. June 21, 2022) ....................................*passim*

vii

*Riley v. Olin Corp.,*
  No. 4:21-cv-01328-SRC,
  2023 WL 371872 (E.D. Mo. Jan. 24, 2023) ................................................27

*Rivera v. Bank of America, N.A.,*
  993 F.3d 1046 (8th Cir. 2021) ....................................................................4, 39

*Rodriguez v. Hy-Vee, Inc.,*
  No. 22-cv-00072, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ...........27

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana,*
  786 F.3d 510 (7th Cir. 2015) ....................................................................39, 40

*Silva v. Evonik Corp.,*
  No. CV 20-2202, 2020 WL 12574912 (D.N.J. Dec. 30, 2020) ..................35

*Smith v. CommonSpirit Health,*
  37 F.4th 1160 (6th Cir. 2022) ............................................................8, 12, 23

*United States ex rel. Lee v. Fairview Health System,*
  413 F.3d 748 (8th Cir. 2005) ............................................................4, 38, 39

*Usenko v. MEMC LLC,*
  926 F.3d 468 (8th Cir. 2019) ........................................................................5

*Wehner v. Genentech, Inc.,*
  No. 20-CV-06894-WHO,
  2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ................................................32

*Williams v. Centene Corp.,*
  No. 22-00216-SEP,
  2023 WL 2755544 (E.D. Mo. Mar. 31, 2023) ....................................*passim*

**STATUTES AND RULES**

29 U.S.C. § 1104 ................................................................................3, 14, 17

29 U.S.C. § 1104(a)(1)(B) ....................................................................................4

Fed. R. Civ. P. 15(a) ........................................................................................38

Appellate Case: 23-2501     Page: 9     Date Filed: 10/19/2023 Entry ID: 5327629

## INTRODUCTION

This Circuit requires plaintiffs alleging a breach of fiduciary duty under ERISA to plead "a sound basis for comparison — a meaningful benchmark" when assessing that "a prudent fiduciary in like circumstances" would have made different choices with respect to a retirement plan. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (citation omitted). The Court reaffirmed that pleading standard in *Matousek v. MidAmerican Energy Co.*, holding that the "key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison — a meaningful benchmark' — not just alleging that 'costs are too high, or returns are too low.'" 51 F.4th 274, 278 (8th Cir. 2022*)*. This "meaningful benchmark" standard fits squarely within the growing consensus among the circuit courts recognizing that in order to challenge the prudence of a fiduciary's actions, a plaintiff must plead a *meaningful* comparator. Plaintiffs failed to do so.

The Amended Complaint alleges that Defendants breached their fiduciary duties under ERISA by (1) negotiating recordkeeping fees for the O'Reilly Automotive, Inc. Profit Sharing and Savings Plan (the "Plan") that Plaintiffs allege were too high, (2) retaining ten cherry-picked investment

1

options in the Plan that Plaintiffs allege were too expensive, and (3) allowing the Plan to pay total plan costs that were higher than certain inapposite averages. Plaintiffs also allege that certain Defendants breached fiduciary duties under ERISA by failing to monitor the performance of other Plan fiduciaries. In purported support of those allegations, Plaintiffs identify several out-of-context price comparators. In particular, in connection with their excessive recordkeeping fee allegations, Plaintiffs cherry-pick eighteen other retirement plans and chart the alleged recordkeeping fees paid by those plans in certain years between 2013 and 2019. Plaintiffs do not provide any information about the recordkeeping services offered by those plans. Similarly, in connection with their excessive investment management and total plan cost allegations, Plaintiffs identify certain industry wide averages and medians calculated by the Investment Company Institute ("ICI"). Yet Plaintiffs provide no information about the funds or plans which comprise those ICI averages and medians.

Applying the Eighth Circuit's "meaningful benchmark" standard, United States District Court Judge Brian C. Wimes correctly held that Plaintiffs' bald cost-to-cost comparisons were insufficient to state a claim. The District Court held that Plaintiffs "failed to provide a solid basis for

2

comparison, a meaningful benchmark, as it relates to recordkeeping, investment funds, and total Plan costs." (App. 794-95 (V3); R. Doc. 71, at 34-35; Tr. 34:24-35:4.)[1] The District Court's application of the Eighth Circuit's precedent is correct and should be affirmed.

## STATEMENT OF THE ISSUES

1. Whether the District Court properly dismissed all claims for breach of fiduciary duty pursuant to ERISA § 404 and 29 U.S.C. § 1104 (Count I) where, among other things, the Amended Complaint failed to plead a meaningful benchmark by which to compare allegedly excessive recordkeeping fees, investment management fees of select funds, and total plan costs as required to support an inference of imprudence. *See Matousek*, 51 F.4th 274; *Meiners*, 898 F.3d 820; *Williams v. Centene Corp.*, No. 22-00216-SEP, 2023 WL 2755544 (E.D. Mo. Mar. 31, 2023); *Riley v. Olin Corp. ("Riley I")*, No. 4:21-cv-01328-SRC, 2022 WL 2208953, at *3 (E.D. Mo. June 21, 2022).

2. Whether the District Court correctly dismissed all claims that Defendant O'Reilly Automotive, Inc. ("O'Reilly") and O'Reilly's Board of

---

[1] "App." refers to Joint Appendix, "V" refers to "Volume," and "Tr." refers to the "Transcript of Oral Argument" on the Motion to Dismiss before the District Court on May 23, 2023.

Appellate Case: 23-2501    Page: 12    Date Filed: 10/19/2023 Entry ID: 5327629

Directors breached their fiduciary duties by failing to monitor the performance and processes of other Plan fiduciaries (Count II) where the Amended Complaint failed to plead an underlying breach. *See Allen v. Wells Fargo & Co.*, 967 F.3d 767, 772-77 (8th Cir. 2020); *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010); *Riley I*, 2022 WL 2208953.

      3.     Whether the District Court properly dismissed the Amended Complaint with prejudice and denied Plaintiffs leave to amend where Plaintiffs already filed an amended complaint and did not submit a motion for leave to further amend or provide a proposed substantive amendment that could cure Plaintiffs' pleading deficiencies. *See Matousek*, 51 F.4th 274; *Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021); *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748 (8th Cir. 2005).

## STATEMENT OF THE CASE

### I.    Legal Background

     The ERISA duty of prudence requires that fiduciaries use the same "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). "The 'prudent person standard is an objective standard that focuses on the fiduciary's conduct preceding the

Appellate Case: 23-2501    Page: 13    Date Filed: 10/19/2023 Entry ID: 5327629

challenged decision.'" *Usenko v. MEMC LLC*, 926 F.3d 468, 473 (8th Cir. 2019) (citation omitted).

## A.    This Circuit's "Meaningful Benchmark" Pleading Standard

In this Circuit, *Meiners* set forth the pleading standard for complaints alleging a breach of fiduciary duty under ERISA: plaintiffs alleging that "a prudent fiduciary in like circumstances" would have made different choices with respect to a plan "must provide a sound basis for comparison — a meaningful benchmark." 898 F.3d at 822 (citation omitted) (affirming dismissal of claim for breach of ERISA fiduciary duties where the complaint lacked "'sufficient factual matter, accepted as true,' to demonstrate" that the defendants acted imprudently (citation omitted)). In *Meiners*, the plaintiffs alleged that the defendants had imprudently failed to remove certain underperforming and high-cost funds from the defendants' retirement plan. *Id.* at 821. This Court affirmed dismissal of the excessive fee allegations, holding that the plaintiffs failed to plead a "meaningful benchmark" by merely "alleging that cheaper alternative investments with *some* similarities exist in the marketplace." *Id.* at 823. The Court observed that "the existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice" and

5

cautioned that "[a]ny other conclusion would exempt ERISA plaintiffs both from pleading benchmarks for the funds and from pleading internal processes about selecting funds." *Id.* at 823-24.

Several years after *Meiners*, the Supreme Court issued *Hughes v. Northwestern University* ("*Hughes I*"), 595 U.S. 170, 173 (2022). In *Hughes I*, the Supreme Court considered the narrow question of whether the Seventh Circuit had improperly dismissed an ERISA breach of fiduciary duty claim by adhering to a "categorical rule" that "an adequate array of choices, including the 'types of funds plaintiffs wanted (low-cost index funds) could eliminate any claim of imprudence.'" *Hughes I*, 595 U.S. at 173; *see also Hughes v. Nw. Univ.* ("*Hughes II*"), 63 F.4th 615, 624 (7th Cir. 2023) (discussing on remand the Supreme Court's limited holding that rejected the Seventh Circuits "reliance on a categorial rule" in assessing claims for breach of fiduciary prudence). The Supreme Court held that the Seventh Circuit had erred in affirming dismissal of the complaint and that such a categorical rule would be "inconsistent with the context-specific inquiry that ERISA requires." *Hughes I*, 595 U.S. at 173. In vacating the Seventh Circuit's judgment, the Supreme Court stated that "circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard

6

to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Id.*

*Hughes I* had no effect on the "meaningful benchmark" pleading standard articulated in *Meiners*. *See Meiners*, 898 F.3d at 822. In fact, just last year, this Court reaffirmed in *Matousek* that plaintiffs alleging a breach of fiduciary duty under ERISA must "provide a sound basis for comparison ─ a meaningful benchmark." 51 F.4th at 278. In *Matousek*, the plaintiffs alleged that the defendants breached their fiduciary duty of prudence by maintaining high-cost and underperforming funds in the plaintiffs' retirement plan and by allowing plan participants to pay excessive recordkeeping costs. *Id.* at 279. The plaintiffs' recordkeeping fee allegations relied on industry-wide averages, and the plaintiffs did not supply any information about the services provided to the underlying plans in exchange for fees. *Id.* at 279-80. The *Matousek* plaintiffs' excessive investment management fee allegations also relied on industry averages and medians and provided no information about "the risk profiles, return objectives, and management approaches" of the underlying funds. *Id.* at 281-82. This Court held that those allegations failed to allege a "meaningful benchmark" and therefore could not "clear[] the pleading bar." *Id.* at 278. The Court

7

emphasized that the "key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison — a meaningful benchmark' — not just alleging that 'costs are too high, or returns are too low.'" *Id.* The Court held that "[e]ven if the fees here look high, we cannot infer imprudence unless similarly sized plans spend less on the same services." *Id.* at 279.

### B. Other Circuits Also Require Plaintiffs To Plead A "Meaningful Benchmark" In ERISA Breach Of Fiduciary Duty Cases

The "meaningful benchmark" standard articulated in *Meiners* and *Matousek* is part of a growing consensus among multiple appellate courts, each of which has held in the wake of the Supreme Court's *Hughes I* decision that a plausible ERISA breach of fiduciary duty claim requires *meaningful* comparators.

For example, in *Smith v. CommonSpirit Health*, the Sixth Circuit affirmed a district court's dismissal of excessive recordkeeping and management fee allegations in an ERISA breach of fiduciary duty suit, holding that the plaintiff had inappropriately relied on "inapt comparators" and "industry average cost[s]," and therefore "fail[ed] to give the kind of context" necessary to infer imprudence. 37 F.4th 1160, 1162, 1167-69 (6th Cir.

8

2022). In particular, the Sixth Circuit held that the plaintiff "ha[d] not pleaded that the services that CommonSpirit's fee cover[ed] are equivalent to those provided by the plans comprising the average in the industry publication that she cites" and had "failed 'to allege that the fees were excessive relative to the services rendered.'" *Id.* at 1169.

Similarly, the Seventh Circuit in *Albert v. Oshkosh Corp.* held that a plaintiff must include "detailed allegations providing a 'sound basis for comparison'" in order to state a facially plausible claim for breach of fiduciary duty under ERISA. 47 F.4th 570, 582 (7th Cir. 2022). In *Albert*, the Seventh Circuit affirmed dismissal of excessive recordkeeping and investment management fee allegations predicated on a comparison of the plan's recordkeeping fees "with nine other plans that [we]re supposedly prudent" and a comparison of the plan's investment options with purportedly "similar and less expensive alternatives." *Id.* at 579-80, 582 (7th Cir. 2022) (citation omitted). The Seventh Circuit noted that the "amended complaint was devoid of allegations as to the quality or type of recordkeeping services the comparator plans provided" and was similarly "threadbare" with respect to the investment management fee allegations. *Id.*

9

at 579, 582.  The Court held that such allegations did not provide sufficient "context" or a "sound basis for comparison."  *Id.* at 580, 582.

Recently, the Tenth Circuit in *Matney v. Barrick Gold of North America*, expressly adopted the Eighth Circuit's pleading standard, holding that "to raise an inference of imprudence through price disparity, a plaintiff has the burden to allege a 'meaningful benchmark.'"  80 F.4th 1136, 1148 (10th Cir. Sept. 6, 2023).  There, the Tenth Circuit affirmed dismissal of a breach of fiduciary duty claim premised on allegedly excessive investment management and recordkeeping fees.  *Id.* at 1142.  The Tenth Circuit reviewed similar cases from the Third, Sixth, Seventh, and Eighth Circuits and held that a recordkeeping fee cost comparison is "meaningful if the complaint alleges that the recordkeeping services rendered by the chosen comparators are similar to the services offered by the plaintiff's plan" to permit an "apples-to-apples comparison."  *Id.* at 1148-49.  Similarly, the Court held that a "meaningful" investment management fee comparator must have "similar investment strategies, similar investment objectives, or similar risk profiles" to the challenged funds.  *Id.* at 1148.

Plaintiffs' Opening Brief relies heavily on the Seventh Circuit's recent reconsideration of *Hughes I* on remand.  (*See* Pl. Br. at 18-20 (citing *Hughes II*,

63 F.4th 615).)[2]  But *Hughes II* does not alter the legal landscape.  Rather, in *Hughes II*, the Seventh Circuit recognized that the Supreme Court's decision in *Hughes I* did not "pronounc[e] a concrete standard" to evaluate claims for breach of duty of prudence.  *Hughes II*, 63 F.4th at 626.  Instead, the Seventh Circuit noted that the Supreme Court's directive in *Hughes I* is to recognize the "difficult tradeoffs" that an ERISA fiduciary faces and the "range of reasonable judgments" that may be made.  *Id.* at 627.  The Seventh Circuit expressly held that when "an alternative explanation for an ERISA fiduciary's conduct [is] patently more reasonable and better supported by the facts than any theory of fiduciary duty violation pleaded by a plaintiff," courts "should not hesitate to dismiss" those claims.  *Id.* at 630.

In *Hughes II*, the Seventh Circuit considered whether to dismiss claims that Northwestern had breached fiduciary duties to plan participants by, among other things, paying allegedly excessive fees to two recordkeepers. *Id.* at 621.  The Seventh Circuit declined to dismiss the plaintiffs' excessive recordkeeping fee claims, holding that the plaintiffs plausibly pled meaningful comparators.  *Id.* at 632.  The Seventh Circuit distinguished the

---

[2]    "Pl. Br." refers to Plaintiffs-Appellants' Opening Brief.

case from *Albert* and *Smith*, observing that unlike in those cases, the *Hughes II* plaintiffs pled specific facts to show that "fees were excessive relative to the recordkeeping services rendered." *Id.* In particular, the plaintiffs in *Hughes II* pled facts about four other university plans much like Northwestern's that had "successfully reduced recordkeeping fees by soliciting competitive bids, consolidating to a single recordkeeper, and negotiating rebates." *Id.* Although the *Hughes II* court did not expressly address the "meaningful benchmark" standard set forth by the Eighth Circuit, unlike in *Meiners*, *Matousek*, *Smith, Albert,* and *Matney*, the *Hughes II* plaintiffs did provide meaningful benchmarks to support their excessive recordkeeping fee allegations.

## II. Factual Background

### A. The Plan

Defendant O'Reilly is a leading auto parts retailer with more than 5,800 stores nationwide and more than 82,000 employees. (App. 48(V1); R. Doc. 27, at 1.) O'Reilly offers its employees the opportunity to save for their retirement by participating in the Plan. (App. 48(V1); R. Doc. 27, at 1.) As of December 2020, the Plan had more than 50,000 participants and

12

approximately $1.2 billion in assets.  (App. 4, 17(V1); R. Doc. 24, at 4, 17 ¶¶ 11, 54.)

The Plan is a "defined contribution" 401(k) plan that allows eligible O'Reilly employees to contribute savings to individual participant accounts. (App. 15(V1); R. Doc. 24, at 15 ¶ 44.)  Each participant's account is funded through a combination of the participant's contributions, O'Reilly's contributions, and earnings from the investment options selected by the participant.  (App. 15-16(V1); R. Doc. 24, at 15, 16 ¶¶ 44, 46-47.)  The Plan is participant-directed; that is, each participant may choose to allocate his or her account into any of the investment options available in the Plan.  (App. 17(V1); R. Doc. 24, at 17 ¶ 53.)

Between 2016 and the filing of the Amended Complaint, the Plan contracted with T. Rowe Price to receive recordkeeping services.  (App. 28(V1); R. Doc. 24, at 28 ¶ 92.)  Plaintiffs allege that the per-participant fees paid for those services ranged between $47 and $88 from 2016 through 2020. (*See* App. 27-28(V1); R. Doc. 24, at 27-28 ¶ 90.)

## B.    Plaintiffs' Allegations

Plaintiffs filed this putative class action on behalf of participants and beneficiaries of the Plan from May 2, 2016, through the date of judgment.

13

(App. 6-10, 13(V1); R. Doc. 24, at 6-10, 13 ¶¶ 18-23, 37.)  Plaintiffs assert two counts:

In Count I, Plaintiffs allege that Defendants breached their fiduciary duty of prudence under ERISA § 404, 29 U.S.C. § 1104.  (App. 4-5, 31-32(V1); R. Doc. 24, at 4-5, 31-32 ¶¶ 12, 100-107.)  Count I is based on three categories of allegations: (1) Defendants negotiated Plan recordkeeping fees that Plaintiffs allege were too high (App. 23-31(V1); R. Doc. 24, at 23-31 ¶¶ 77-99), (2) Defendants retained ten cherry-picked investment options in the Plan that Plaintiffs, with hindsight, allege were too expensive (App. 20-22(V1); R. Doc. 24, at 20-22 ¶¶ 66-70), and (3) Defendants allowed the Plan to pay total plan costs that were higher than certain inapposite averages alleged by Plaintiffs. (App. 22-23(V1); R. Doc. 24, at 22-23 ¶¶ 71-76.)

In Count II, Plaintiffs allege that certain Defendants breached fiduciary duties under ERISA by failing to adequately monitor the performance and processes of other Plan fiduciaries.  (App. 33-34(V1); R. Doc. 24, at 33-34 ¶¶ 108-114.)

### 1. Recordkeeping Fee Allegations

Plaintiffs allege that the Plan's recordkeeping fees of approximately $47 to $88 annually per participant were excessive.  (App. 27-28(V1); R. Doc.

14

24, at 27-28 ¶ 90.) Plaintiffs purport to support those claims based on a patchwork of speculative and out-of-context allegations.

Plaintiffs primarily rely on a comparison of the Plan's alleged recordkeeping fees to the alleged recordkeeping fees paid in 2018 by eight other retirement plans "with more than 15,000 participants" and the alleged recordkeeping fees paid in various years by 11 other retirement plans "ranging in size from 3,000 participants to over 18,000 participants." (*See* App. 29-31(V1); R. Doc. 24, at 29-31 ¶¶ 96-97.) While Plaintiffs' side-by-side comparison focuses on the *size* of the comparator plans (which broadly range from 3,146 participants with $446 million in assets to 47,358 participants with $3 billion in assets), it fails to address how the *specific services* provided by T. Rowe Price to the Plan were equivalent in value to the services provided to the comparator plans, the majority of which are serviced by different recordkeepers altogether. (*See* App. 4, 29-31(V1); R. Doc. 24, at 4, 29-31 ¶¶ 11, 96-97.)

Plaintiffs additionally rely on a discovery stipulation filed by a different recordkeeper -- Fidelity -- in an unrelated litigation to address the "value of recordkeeping services" that Fidelity provided to its own in-house retirement plan. (App. 28-29(V1); R. Doc. 24, at 28-29 ¶¶ 93-95.) Fidelity

15

stipulated that the services it provided to its retirement plan had a value of $14 to $21 per participant.  (App. 28-29(V1); R. Doc. 24, at 28-29 ¶¶ 93-95.)  Plaintiffs assert no additional facts about the services Fidelity provided to its plan and how those services compare to the services T. Rowe Price provided to the Plan.

Finally, Plaintiffs speculate that "there is little to suggest that Defendants conducted an appropriate [Request for Proposal] at reasonable intervals" for recordkeeping fees.  (App. 27(V1); R. Doc. 24, at 27 ¶¶ 88-89.)

### 2.    Investment Management Fee Allegations

Plaintiffs allege that the investment management fees of ten of the Plan's thirty investment options were too expensive.  (App. 20-22(V1); R. Doc. 24, at 20-22 ¶¶ 66-70.)  Their claim rests entirely on a chart which compares the fees for those ten funds to industry-wide averages and medians calculated by the ICI.  (App. 20-21(V1); R. Doc. 24, at 20-21 ¶¶ 67-68.)  Plaintiffs do not allege a single fact about the characteristics of the challenged funds (including their performance), nor do Plaintiffs explain the composition or characteristics of the funds underlying the ICI composites.  (*See* App. 60-61(V1); R. Doc. 27, at 13-14.)

### 3. Total Plan Cost Allegations

Plaintiffs allege that the total plan costs were too high. (App. 22-23(V1); R. Doc. 24, at 22-23 ¶¶ 71-76.) Plaintiffs rely on a comparison of the Plan's alleged total costs to the "average total plan cost for plans that have more than $1 billion" as calculated by the ICI in a single year, 2018. (App. 22-23(V1); R. Doc. 24, at 22-23 ¶¶ 72-75.) The ICI total plan cost measure "includes all fees on the audited Form 5500 reports as well as fees paid through investment expense ratios." (App. 22(V1); R. Doc. 24, at 22 ¶ 72.) Plaintiffs provide no information about the characteristics of the plans comprising the ICI's 2018 average, including information about the services provided to those plans in exchange for the fees paid.

## III. Procedural Background

On May 2, 2022, Plaintiffs (six former O'Reilly employees) filed a putative class action complaint asserting breach of fiduciary duty claims against Defendants under ERISA § 404 and 29 U.S.C. § 1104. (App. 806(V3); R. Doc. 1.) On July 19, 2022, Defendants moved to dismiss. (App. 808(V3); R. Docs. 15, 16.) On August 12, 2022, Plaintiffs filed the Amended Complaint. (App. 1-40(V1), 809(V3); R. Doc. 24.) On September 2, 2022,

17

Defendants moved to dismiss the Amended Complaint. (App. 41-65 (V1); 809-10(V3); R. Docs. 26, 27.)

On May 23, 2023, the District Court heard oral arguments on Defendants' motion to dismiss. (App. 762-96(V3); R. Docs. 69, 71.) On the same day, the District Court granted Defendants' motion and denied Plaintiffs' informal request to further amend the pleadings. (App. 794-95, 797, 815(V3); R. Docs. 69, 71, at 35-36; A001; Tr. 35:22-36:15.)[3] The District Court held that Plaintiffs failed to meet this Circuit's pleading standard because they "failed to provide a solid basis for comparison, a meaningful benchmark, as it relates to recordkeeping, investment funds, and total Plan costs." (App. 794-95(V3); R. Doc. 71, at 34-35; Tr. 34:24-35:4.) In particular, the District Court held that this Circuit's pleading standard does not permit the type of "broad" comparisons that Plaintiffs rely on in the Amended Complaint. (App. 774(V3); R. Doc. 71, at 14; Tr. 14:1-6.) The District Court recognized — and Plaintiffs agreed — that courts in this Circuit have dismissed "very similar" recordkeeping fee allegations that were "ple[]d in the same way." (*See* App. 781(V3); R. Doc. 71, at 21; Tr. 21:1-7.) The District Court

---

[3] "A" refers to Plaintiffs' Addendum filed with their Opening Brief.

rejected Plaintiffs' reliance on out-of-circuit authority, observing that Eighth Circuit law requires more than just the "vague comparisons" that Plaintiffs alleged. (*See* App. 784, 788, 795(V3); R. Doc. 71, at 24, 28, 35; Tr. 24:1-16; 28:1-17; 35:8-14.) The District Court further held that Plaintiffs' monitoring claim failed because it was derivative of and dependent upon the viability of Plaintiffs' underlying breach of fiduciary duty claim.[4] (*See* App. 795-96(V3); R. Doc. 71, at 35-36; Tr. 35:23-36:5.) In addition, the District Court denied Plaintiffs' informal request for leave to amend. (*See* App. 795(V3); R. Doc. 71, at 35; Tr. 35:8-15.)

On June 21, 2023, Plaintiffs filed this appeal. (App. 798, 815(V3); R. Doc. 72; A002.)

## SUMMARY OF ARGUMENT

Twice now this Court has set forth the pleading standard for a breach of fiduciary duty claim under ERISA in the Eighth Circuit: plaintiffs alleging such a breach "must provide a sound basis for comparison — a meaningful benchmark." *Matousek*, 51 F.4th at 278; *Meiners*, 898 F.3d at 822 (citation

---

[4] At oral argument, Plaintiffs' counsel did not dispute that the monitoring claim is derivative of an underlying fiduciary breach and acknowledged "that if Count 1 fails, Count 2 fails." (App. 775(V3); R. Doc. 71, at 15; Tr. 15:11-12.)

19

omitted). The Amended Complaint fails to meet that standard, relying instead on generic cost data that has been repeatedly rejected, not only in the Eighth Circuit, but also by appellate courts throughout the country. Plaintiffs' allegations of fiduciary misconduct should not be allowed to proceed to discovery for multiple reasons.

*First*, the District Court properly concluded that Plaintiffs' recordkeeping fee allegations — which primarily rely on a comparison of the Plan's per participant recordkeeping fees to recordkeeping fees from eighteen other retirement plans — do not meet this Circuit's "meaningful benchmark" standard. Plaintiffs have merely cherry-picked eighteen plans which, during certain arbitrarily chosen years, allegedly paid less for unknown recordkeeping services than the Plan did. Those out-of-context data points cannot support a claim for breach of fiduciary duty. Plaintiffs' other recordkeeping fee allegations — an irrelevant discovery stipulation filed in a different case and Plaintiffs' speculation that Plan fiduciaries may not have conducted a Request for Proposal at Plaintiffs' desired intervals — have also been repeatedly rejected by multiple courts in this Circuit as insufficient to support an inference of imprudence.

20

*Second*, the District Court properly held that Plaintiffs' excessive investment management fee allegations, based on industry averages comprised of unknown investment funds, were similarly not premised on "meaningful benchmark[s]." Plaintiffs do not and cannot identify a single court in this Circuit that has accepted the industry average pled by Plaintiffs as a "meaningful benchmark."

*Third*, Plaintiffs' total plan cost allegations, which also rely solely on a comparison to mean and median industry averages, are deficient for the same reason that their excessive recordkeeping and investment management fee allegations are. Those allegations, too, were properly dismissed.

*Fourth*, the District Court properly dismissed the Amended Complaint's allegations against O'Reilly and its Board of Directors for allegedly failing to monitor the performance of the Plan's fiduciaries. Plaintiffs have failed to plead an underlying breach of fiduciary duty, and Plaintiffs do not dispute that without a predicate fiduciary duty breach, their monitoring claim must be dismissed.

*Fifth*, the District Court did not abuse its discretion by denying Plaintiffs' informal request for leave to amend the complaint for a second

21

time.  Plaintiffs already amended once and Plaintiffs do not identify how they intend to cure the critical pleading deficiencies with a second amended complaint.  Plaintiffs' single-sentence request for amendment, raised for the first time in the conclusion of their opposition to Defendants' Motion to Dismiss, was properly rejected.

## ARGUMENT

The Court reviews *de novo* a district court's decision to dismiss a complaint.  *Matousek*, 51 F.4th at 278.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Although a district court must take the allegations in a plaintiff's pleadings as true and make all reasonable inferences in favor of the plaintiff, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 545 (alteration in original) (citation omitted).  Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22

In the ERISA context, a motion to dismiss is an "important mechanism for weeding out meritless [ERISA] claims" and calls for "careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *Smith*, 37 F.4th at 1162. Indeed, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). Dismissing ERISA claims that rest on conclusory allegations "prevent[s] settlement extortion" where "a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence." *Id.* (emphasis in original) (citations omitted).

Appellate Case: 23-2501    Page: 32    Date Filed: 10/19/2023 Entry ID: 5327629

## I. Dismissal Of Count I Should Be Affirmed Because Plaintiffs Failed To Plead Any Facts To Support A Reasonable Inference Of Imprudent Conduct

The District Court properly dismissed the Amended Complaint, holding that Plaintiffs "failed to provide a solid basis for comparison, a meaningful benchmark as it relates to record-keeping, investment funds, and total Plan costs." (App. 794-95(V3); R. Doc. 71, at 34-35; Tr. 34:24-35:4.) The District Court observed that "consistent with the case law" in this Circuit, Plaintiffs' "vague comparisons" "failed to show a meaningful benchmark" to support Plaintiffs' allegation of imprudence. (App. 788, 795(V3); R. Doc. 71, at 28, 35; Tr. 28:7-16, 35:2-4.) The Court should affirm.

### A. Plaintiffs' Recordkeeping Fee Allegations Do Not Provide A Meaningful Benchmark From Which To Infer Imprudence

According to Plaintiffs, the Court should infer that the Plan's recordkeeping fees were excessive based on three allegations: (1) a comparison of the Plan's alleged recordkeeping fees with the alleged fees of eighteen other retirement plans during certain years, (2) a discovery stipulation entered into by a different recordkeeper (Fidelity) in a different case, and (3) the unsupported assertion that Defendants may not have engaged in a request for proposal for recordkeeping fees between 2016 and

24

2022.  (App. 23-31(V1); R. Doc. 24, at 23-31 ¶¶ 77-99.)  None of those allegations provide a meaningful benchmark to infer a breach of fiduciary duty.

### 1.  Plaintiffs' Comparator Plans Fail To Provide A Meaningful Benchmark To Plausibly State A Claim That The Plan's Recordkeeping Fees Were Excessive

In connection with their excessive recordkeeping fee claim, Plaintiffs primarily rely on two charts comparing the Plan's alleged recordkeeping fees on a per participant basis with the fees of eighteen comparator plans during 2013, 2014, 2018, and 2019.  (App. 29-31(V1); R. Doc. 24, at 29-31 ¶¶ 96-97.)  (*See* Pl. Br. at 22-24.)  The only other information Plaintiffs allege about the comparator plans are the plans' (1) assets (ranging from $446 million to $3 billion), (2) numbers of participants (ranging from 3,146 participants to 47,358 participants), and (3) recordkeepers (including six different recordkeepers). (App. 29-31(V1); R. Doc. 24, at 29-31 ¶¶ 96-97.) The Amended Complaint lacks allegations about the specific recordkeeping services provided to the comparator plans as compared to the services provided to the Plan.  Such cost-to-cost comparators do not satisfy this Circuit's "meaningful benchmark" standard.  *See Matousek*, 51 F.4th at 278; *Meiners*, 898 F.3d at 822.

Many courts in this Circuit have applied the "meaningful benchmark" standard set forth in *Meiners* and reaffirmed in *Matousek* to dismiss allegations that are identical to Plaintiffs'. For example, in *Williams*, the plaintiffs alleged that their plan's recordkeeping fees were excessive as compared to "a list of eight other plans that allegedly pa[id] less in per-participant recordkeeping fees." 2023 WL 2755544, at *5. The court dismissed the complaint because the plaintiffs' comparison, which relied on a table nearly identical to that offered by Plaintiffs here, was "silent as to which recordkeeping services those other [] plans received." *Id.* Similarly, in *Riley I*, the court dismissed an excessive recordkeeping fee claim that relied on a table purporting to list recordkeeping fees of similarly sized plans. 2022 WL 2208953, at *3. The court observed that "the table [] fails to include any facts about the specific services or specific plans beyond the assertion that the plans have 'similar sizes and assets' and the conclusory language describing the services as 'virtually identical.'" *Id.* So too here, Plaintiffs' chart of alleged recordkeeping fees paid by eighteen other plans of varying sizes during arbitrarily selected years does not provide a "meaningful benchmark." Plaintiffs' arguments to the contrary are of no avail.

*First*, Plaintiffs assert that their comparators offer a "meaningful benchmark" because "as alleged in the Amended Complaint, all large plans offer roughly the same base services." (*See* Pl. Br. at 22.) In fact, the Amended Complaint merely alleges that "[t]here are two types of essential recordkeeping services provided by all national recordkeepers for large plans." (App. 23(V1); R. Doc. 24, at 23 ¶ 79.) Plaintiffs assertion that "the Court has no basis at this stage 'to doubt the plausibility' of" that allegation misses the point. (Pl. Br. at 24 (citing *Rodriguez v. Hy-Vee, Inc.*, No. 22-cv-00072, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022)).) Plaintiffs' conclusory allegation that recordkeepers provide "two types" of "essential services" does not provide any information about the services *selected* by the Plan or by Plaintiffs' comparator plans. The identical allegation has been dismissed by multiple courts in this Circuit as insufficient to state a claim. *See Williams*, 2023 WL 2755544, at *5 ("The Eighth Circuit has highlighted that not all recordkeeping and administrative fees are 'apples-to-apples'"); *Riley v. Olin Corp. ("Riley II")*, No. 4:21-cv-01328-SRC, 2023 WL 371872, at *3 (E.D. Mo. Jan. 24, 2023) (holding that the "conclusory argument that 'recordkeepers in

27

the marketplace offer the same range of services' fails to allege what specific services any of the plans provide").[5]

*Second*, Plaintiffs assert that their "comparator plans were selected based on the most important factor in determining recordkeeping costs — plan participant size." (Pl. Br. at 22.) But Plaintiffs' comparator plans include participant counts ranging from 3,146 participants to 47,358 participants. (App. 29-31(V1); R. Doc. 24, at 29-31 ¶¶ 96-97.) Not one of Plaintiffs' comparators falls within the Plan's participant count range of 49,782 to 53,561. (*See* App. 4, 27-31(V1); R. Doc. 24, at 4, 27-31 ¶¶ 11, 90, 96-97.) Even if Plaintiffs' comparators were close in size to the Plan, that

---

[5]     Plaintiffs also assert that the "service codes from the Plan's Form 5500 shows that the Plan received the same type of services as the comparator plans." (Pl. Br. at 21.) That allegation is not contained anywhere in the Amended Complaint and appears for the first time in Plaintiffs' Opening Brief. (*See* App. 29-30(V1); R. Doc. 24, at 29-30 ¶ 96.) In any event, the Form 5500 service codes for the Plan include, for example, code "64 - Recordkeeping fees." (*See* App. 75, 77-80, 117, 119-21, 154, 156-59, 193, 195-97, 230, 232-33(V1); R. Docs. 28-1, at 7, 9-12; 28-2 at 7, 9-11; 28-3, at 7, 9-12; 28-4, at 7, 9-11; 28-5, at 7, 9-10.); *see also*, Dept. of Labor, 2020 Instructions for Form 5500-SF, at 27, (last visited Oct. 12, 2023) (https://www.dol.gov/sites/dol-gov/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2020-instructions.pdf). Such broadly phrased codes do nothing to describe the specific recordkeeping services selected by the Plan as compared to the services selected by Plaintiffs' comparator plans.

Appellate Case: 23-2501     Page: 37     Date Filed: 10/19/2023 Entry ID: 5327629

alone does not provide a "meaningful benchmark." *See Matousek*, 51 F.4th at 279 (holding that "we cannot infer imprudence unless similarly sized plans spend less on the *same services*" (emphasis added)). Plaintiffs have pled no information about the recordkeeping services of the comparator plans.

*Third*, Plaintiffs allege that their excessive recordkeeping fee allegations are nearly identical to those upheld in *Hughes II*. (Pl. Br. at 18-19.) Not so. The plaintiffs in *Hughes II* alleged that the defendants breached their fiduciary duties to plan participants by using two recordkeepers and paying excessive fees to both. *Hughes II*, 63 F.4th at 621-22. In support of those allegations, the plaintiffs provided specific factual details about plans that were similar to the Northwestern plans, including "[p]lans offered by Loyola Marymount University, Pepperdine University, Purdue University, and California Institute of Technology," which were able to "successfully reduce[] recordkeeping fees by soliciting competitive bids, consolidating to a single recordkeeper, and negotiating rebates." *Id.* at 632. The operative complaint in *Hughes II* details how each of the comparator plans decided to consolidate recordkeeping functions, hired a third-party consultant, solicited bids, and ultimately selected a single recordkeeper and decreased costs for plan participants. (*See* App. 659-64(V3); R. Doc. 66, at 40-45

29

¶¶ 92-97.) Although the *Hughes II* court did not address whether the plaintiffs were required to plead "a meaningful benchmark" in order to state an excessive recordkeeping fee claim, the *Hughes II* plaintiffs did provide "a meaningful benchmark" by detailing the actions of four comparator universities that decreased their recordkeeping fee expenses by consolidating to a single recordkeeper.[6]

*Fourth*, Plaintiffs assert that their "choice of comparators . . . raises issues of fact that require assessment on a more developed record." (Pl. Br. at 29.) Not so; a plaintiff seeking to state a claim for breach of an ERISA fiduciary duty must satisfy the "meaningful benchmark" standard at the pleading stage. *See Matousek*, 51 F.4th at 278; *Meiners*, 898 F.3d at 822. Plaintiffs' threadbare comparison charts do not contain sufficient information to provide the Court with a "meaningful benchmark" from

---

[6] For the same reason, Plaintiffs' assertion that they "do not have access to recordkeeping agreements entered into by other plan fiduciaries" is of no moment. (*See* Pl. Br. at 25.) Plaintiffs have substantial information available to them, both publicly and via required ERISA disclosures including "plan documents, summary plan descriptions" and "account statements that participants get on a quarterly basis that set [forth] the fees that they pay on record-keeping." (*See* App. 791(V3); R. Doc. 71, at 31; Tr. 31:1-22.) As the *Hughes II* complaint shows, there is more than one way to establish a meaningful benchmark for a plan's recordkeeping fees.

30

which to infer imprudence at the pleading stage. *See Matousek*, 51 F.4th at 278; *Meiners*, 898 F.3d at 822.

> ## 2. Plaintiffs' Reliance On A Stipulation Filed By A Different Recordkeeper In A Different Case Is An Insufficient Comparator To Plead Imprudence

Together with the eighteen purported comparator plans, Plaintiffs also rely on a discovery stipulation filed by Fidelity in a different litigation. (App. 28-29(V1); R. Doc. 24, at 28-29 ¶¶ 93-95.) That stipulation states that the services Fidelity provided to its own retirement plan had a market value of $14 to $21 per participant. (App. 28-29(V1); R. Doc. 24, at 28-29 ¶¶ 93-95.) Plaintiffs do not explain why a discovery stipulation filed by Fidelity in a different litigation has any bearing on the recordkeeping fees paid by *this* Plan. Moreover, Fidelity's stipulation states that its own plan "did not receive any broader or more valuable recordkeeping services" than other large Fidelity-recordkeeper plans. (App. 28-29(V1); R. Doc. 24, at 28-29 ¶ 94.) Plaintiffs fail to address whether Fidelity's services may have been *narrower* or *less valuable* — and therefore may have cost less — than the services that T. Rowe Price provided to the Plan here.

Several courts have thus rejected nearly identical recordkeeping claims premised on the same Fidelity discovery stipulation. *See e.g.*, *Williams*, 2023

Appellate Case: 23-2501    Page: 40    Date Filed: 10/19/2023 Entry ID: 5327629

WL 2755544, at *5 ("As several courts have already held, 'Fidelity took that position in litigation regarding the recordkeeping services it provided to *its own plans.* [Plaintiffs] [do] not explain how the services that Fidelity provided to its own plans are equivalent to the services Fidelity provided to the Plan at issue in this case. Without more, the $14-21 figure cannot serve as an adequate market comparator.'" (citation omitted)); *see also Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021) (rejecting the same Fidelity stipulation and holding that the plaintiff did "not explain how the services that Fidelity provided to its own plans are equivalent in value to the services Fidelity provided to the [p]lan at issue in this case"); *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 2:20-CV-01493-CCW, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (rejecting comparison to the Fidelity stipulation and observing that it was "premised on unspecified recordkeeping services . . . without any comparison to the services provided to the Plan" at issue). Plaintiffs do not cite a single decision that has upheld the discovery stipulation as a meaningful benchmark. (*See* Pl. Br. at 27.)

32

### 3. Plaintiffs' Speculative Allegation That Plan Fiduciaries May Not Have Conducted A Request For Proposal Does Not State A Claim

Along with the inapt comparator plans and the irrelevant Fidelity stipulation, Plaintiffs also speculate that the Plan's recordkeeping fees were excessive because "there is little to suggest that Defendants conducted an appropriate RFP [request for proposal] at reasonable intervals — or certainly at any time prior to 2016 through the present — to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers." (App. 27(V1); R. Doc. 24, at 27 ¶ 89.) At the same time, Plaintiffs acknowledged at oral argument that a plan is not required to conduct requests for proposals. (App. 783(V3); R. Doc. 71, at 23; Tr. 23:14-24.) Indeed, "the allegation that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation." *Riley I*, 2022 WL 2208953, at *5 (dismissing the plaintiffs' recordkeeping fees allegations in part because failure to engage in requests for proposal does not infer imprudence); *see also Matney*, 80 F.4th at 1156 ("Simply alleging the Committee needed to conduct regular RFPs does not raise a plausible inference of imprudence in this case.")

Appellate Case: 23-2501    Page: 42    Date Filed: 10/19/2023 Entry ID: 5327629

**B.     Plaintiffs Fail To Plead A Meaningful Benchmark To Plausibly State A Claim That The Plan's Investment Management Fees Were Too Expensive**

Plaintiffs' allegation that ten of the Plan's investment options were too expensive relies exclusively on inapt comparisons to certain median and average fees calculated by the ICI.  (*See* App. 20-21(V1); R. Doc. 24, at 20-21 ¶¶ 67-68.)   Plaintiffs do not allege any information about the funds underlying the ICI data, including information about the performance, investment strategy, or risk characteristics of those funds as compared to the ten challenged funds in the Plan.

Courts in this Circuit have repeatedly held that the cited ICI data cannot satisfy the "meaningful benchmark" standard.  For example, in *Riley I,* the district court rejected the identical ICI data that Plaintiffs rely on here, holding that "[t]he Eighth Circuit requires the Court to thoroughly compare challenged funds and putative benchmark funds with regard to fund holdings, investment style, and strategy — and neither the [p]laintiffs nor the ICI data provide any of this required information."  2022 WL 2208953, at *5 (citing cases rejecting the ICI as a meaningful benchmark); s*ee also Matney*, 80 F.4th at 1155 (dismissing excessive investment fee allegations premised on a comparison to ICI medians and holding that "[a] median expense ratio

34

derived from a broad range of funds — for example, all funds within the domestic equity investment category — reveals no information about how the specific funds within that category operate"); *Williams*, 2023 WL 2755544, at *4 (dismissing investment management fee allegations that relied only on the "ICI Median" and "ICI Average" as comparators, holding that the ICI data does not meet the "meaningful benchmark" standard).[7]

---

[7]     Plaintiffs cite decisions by several out-of-circuit courts that have upheld imprudent investment option allegations on the basis of the ICI charts, but none of those courts were subject to this Circuit's "meaningful benchmark" standard. (*See* Pl. Br. at 28-29.) Plaintiffs' reliance on those out-of-circuit authorities should be disregarded, particularly because the plaintiffs in those cases did not exclusively rely on the ICI comparison like Plaintiffs do here. *See e.g.*, *Huang v. TriNet HR, III, Inc.*, No. 8:20-CV-2293-VMC-TGW, 2022 WL 93571, at *2 (M.D. Fla. Jan. 10, 2022) (denying motion to dismiss where the plaintiffs alleged that the defendants "fail[ed] to utilize lower fee share classes"); *McCool v. AHS Mgmt. Co.*, No. 3:19-CV-01158, 2021 WL 826756, at *5 (M.D. Tenn. Mar. 4, 2021) (denying motion to dismiss where plaintiffs alleged that the plan "failed to switch to identical lower-fee share class mutual funds"); *Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2021 WL 1212579, at *7 (E.D. Mich. Mar. 31, 2021) (denying motion to dismiss in part because the plaintiffs alleged that the defendants "should have selected lower-cost share classes of mutual funds, where available"); *Silva v. Evonik Corp.*, No. CV 20-2202, 2020 WL 12574912, at *5 (D.N.J. Dec. 30, 2020) (denying motion to dismiss investment management fee claim where plaintiffs did not solely rely on ICI data and cited to "specific examples of cheaper investment alternatives"); *Bouvy v. Analog Devices, Inc.*, No. 19-CV-881 DMS (BLM), 2020 WL 3448385, at *8 (S.D. Cal. June 24, 2020) (denying motion to dismiss when the plaintiff pled specific, concrete facts that the plan paid higher fees for the "*identical* mutual fund product"); *Pinnell v. Teva Pharms. USA, Inc.*, No. CV 19-5738, 2020 WL 1531870, at *1 (E.D. Pa. Mar. 31, 2020) (denying

Appellate Case: 23-2501    Page: 44    Date Filed: 10/19/2023 Entry ID: 5327629

Moreover, contrary to Plaintiffs' allegations, higher investment management costs are not *per se* imprudent because "the existence of a cheaper fund does not mean that a particular fund is too expensive in the market generally or that it is otherwise an imprudent choice." *Meiners*, 898 F.3d at 823-24 (emphasis omitted). Plaintiffs myopically focus on the costs of the ten challenged Plan investment options, as though those costs can be divorced from the investment options' other critical features such as performance.

### C. Plaintiffs Fail To Plead A Meaningful Benchmark To Plausibly State A Claim That The Total Plan Costs Were Too High

Plaintiffs' total plan cost allegations suffer from the same deficiencies as their investment management fee allegations. Plaintiffs merely compare the Plan's "total plan cost" to an average generated by the ICI for "plans that have over 1 billion dollars" without describing how the services received and the investment options selected by those plans are similar to or different from those of the Plan. (*See* App. 22-23(V1); R. Doc. 24, at 22-23 ¶¶ 72-75.)

---

motion to dismiss in part because plaintiffs cited to multiple comparisons of specific investments options with "similar, lower-cost alternatives" and did not solely rely on ICI comparisons).

That two plans have similar total assets provides no information about the services and investment options that those plans offer or the reasonable costs associated with those choices. In *Williams*, the district court dismissed the plaintiffs' identical allegations that total plan costs were too high as compared to the ICI total plan cost measure, holding that "[a] general industry average, without more, cannot serve as a meaningful benchmark." 2023 WL 2755544, at *4. Plaintiffs do not distinguish this authority nor cite a single case in the Eighth Circuit that has recognized the ICI as a meaningful benchmark to compare total plan costs.

## II. The District Court Correctly Dismissed Plaintiffs' Failure To Monitor Claim (Count II) Because There Is No Underlying Fiduciary Breach

Without a viable breach of fiduciary duty claim, it is well-established that there is no basis to maintain Plaintiffs' derivative failure to monitor claim. *See Allen*, 967 F.3d at 777 (holding "[b]ecause the district court properly dismissed Appellants' claims of breach of fiduciary duties, the district court also properly dismissed Appellants' derivative claims of co-fiduciary liability and breach of the duty to monitor"); *Brown*, 628 F.3d at 461 (affirming district court's dismissal of derivative failure to monitor claim, holding that the claim cannot "survive without a sufficiently pled theory of

an underlying breach"); *Riley I*, 2022 WL 2208953, at *7 (dismissing failure to monitor claim where the plaintiffs' "only argument against dismissal presumes that they state a breach-of-fiduciary-duty claim against the investment committee").

Indeed, at oral argument Plaintiffs acknowledged "that if Count 1 fails, Count 2 fails." (App. 775(V3); R. Doc. 71, at 15; Tr. 15:11-12.) The District Court correctly dismissed Plaintiffs' failure to monitor claim because, as discussed above, Plaintiffs fail to state a claim for the predicate fiduciary breach.

## III. The District Court Did Not Err In Dismissing The Amended Complaint With Prejudice And Denying Leave To Amend For A Second Time

The Court reviews a district court's decision to dismiss a complaint and deny leave to amend for abuse of discretion. *See Matousek*, 51 F.4th at 282. "Although leave to amend 'shall be freely given when justice so requires,' *see* Fed. R. Civ. P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *Fairview Health Sys.*, 413 F.3d at 749.

Plaintiffs already filed an amended complaint. They have not moved for leave to file a second amended complaint nor have they provided the District Court with any explanation for how they could amend. Plaintiffs'

38

informal request for leave to amend, raised for the first time in a single sentence in their opposition to Defendants' Motion to Dismiss the Amended Complaint, is insufficient. (App. 283(V1); R. Doc. 33, at 15.) This Court has consistently held that a district court does not abuse its discretion in denying a request for leave to amend where, as here, a plaintiff's "request was raised in a single sentence in response to a motion to dismiss and the party made no motion for leave nor attempted to explain the substance of the proposed amendment." *Rivera*, 993 F.3d at 1051 (8th Cir. 2021). *See also Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006) (holding that the district court did not abuse its discretion in denying leave to amend when the plaintiff "raised this issue with a one line request in his brief opposing defendants' motion to dismiss" and "made no motion for leave to amend and did not explain the substance of his proposed amendment"); *Fairview Health Sys.*, 413 F.3d at 750 ("Given [plaintiff's] failure to communicate the substance of her proposed amendments, we hold that the district court did not abuse its discretion in denying Lee's request for leave to amend.").[8]

---

[8] Plaintiffs' own cited authorities support that when a plaintiff has had a chance to amend his or her pleading once, as here, the court has discretion to dismiss with prejudice. *See e.g.*, *Runnion ex rel. Runnion v. Girl*

Plaintiffs vaguely assert that they "discussed at oral argument ways in which the Plaintiffs could use information obtained in discovery to add to the Amended Complaint." (Pl. Br. at 32.) (*See* App. 793-94(V3); R. Doc. 71, at 33-34; Tr. 33:24-34:1-8.) But Plaintiffs have received no discovery from Defendants or any third parties in this case. Nor have Plaintiffs articulated, either during oral argument or in their Opening Brief, how they would amend their pleading to allege meaningful benchmarks. (App. 793-94(V3); R. Doc. 71, at 33-34; Tr. 33:24-34:1-8.) (*See* Pl. Br. at 32.)

The Amended Complaint is already Plaintiffs' second bite at the apple. The Amended Complaint — which added only seven new factual paragraphs to the Complaint (*see* App. 4, 27-31(V1); R. Doc. 24, at 4, 27-31 ¶¶ 11, 90 n. 11, 93-97) — substantially repeated the conclusory allegations in

---

*Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (noting that a plaintiff was permitted one opportunity to amend the original complaint); *Reinholdson v. Minnesota*, No. CIV01-1650(RHK/JMM), 2001 WL 34660104, at *1 (D. Minn. Oct. 26, 2001) ("Where a plaintiff has had a full opportunity to amend the [c]omplaint prior to consideration of the Motion to Dismiss, and elects to stand on the pleading challenged, there are reasons why the Court would not afford an additional opportunity to amend, but rather would dismiss with prejudice.") In addition, Plaintiffs' reliance on *Frey v. City of Herculaneum*, is misplaced because there, the plaintiff sought to amend for the first time and submitted a proposed amended complaint that substantively addressed the deficiencies in the original complaint. *See* 44 F.3d 667, 672 (8th Cir. 1995).

Appellate Case: 23-2501     Page: 49     Date Filed: 10/19/2023 Entry ID: 5327629

the initial Complaint and failed to cure any of the pleading deficiencies identified by Defendants in the initial Motion to Dismiss. (*See* App. 808(V3); R. Doc. 16.) The District Court properly denied leave to amend for a second time.

## CONCLUSION

For the foregoing reasons, Defendants-Appellees respectfully request that the Court affirm the judgment of the District Court dismissing the Amended Complaint with prejudice.

Appellate Case: 23-2501     Page: 50     Date Filed: 10/19/2023 Entry ID: 5327629

October 18, 2023

Respectfully submitted,

*/s/ Michael S. Hines*

James R. Carroll
Michael S. Hines
Mary E. Grinman
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone: 617-573-4800
james.carroll@skadden.com
michael.hines@skadden.com
mary.grinman@skadden.com

Charles B. Cowherd
SPENCER FANE LLP
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone: 417-888-1000
ccowherd@spencerfane.com

*Counsel for Defendants-Appellees*
*O'Reilly Automotive, Inc., The Board of*
*Directors of O'Reilly Automotive, Inc.,*
*The O'Reilly Automotive 401(k) Plan*
*Investment Committee and John Does 1-30*

42

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, as calculated by Microsoft Word, it contains 8,583 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word in a 14-point Book Antiqua font. I further certify that this brief has been scanned for viruses and is virus-free. *See* Eighth Circuit Rule 28A(h)(2).

October 18, 2023                                   Respectfully submitted,

                                                                    */s/ Michael S. Hines*
                                                                    Michael S. Hines
                                                                    SKADDEN, ARPS, SLATE,
                                                                      MEAGHER & FLOM LLP
                                                                    500 Boylston Street
                                                                    Boston, Massachusetts 02116
                                                                    617-573-4800
                                                                    michael.hines@skadden.com

                                                                    *Counsel for Defendants-Appellees*

43

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(b) and Eighth Circuit Rule 25A, I hereby certify that on October 18, 2023, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

October 18, 2023

Respectfully submitted,

*/s/ Michael S. Hines*
Michael S. Hines
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
617-573-4800
michael.hines@skadden.com

*Counsel for Defendants-Appellees*

Appellate Case: 23-2501   Page: 53   Date Filed: 10/19/2023 Entry ID: 5327629