No. 23-2501
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

ERICA BARRETT, KATHLEEN VINCENT, CONNIE ENDERLE, EDWARD
Q. INGERSON, II, PENNY KENOYER AND GILBERT ONTIVEROS,
individually and on behalf of all others similarly situated, *Plaintiffs- Appellants.*

v.

O'REILLY AUTOMOTIVE, INC., THE BOARD OF DIRECTORS OF
O'REILLY AUTOMOTIVE, INC., O'REILLY AUTOMOTIVE 401(K) PLAN
INVESTMENT COMMITTEE, and JOHN DOES 1-30, *Defendants-Appellees*

---

Appeal from the United States District Court for the Western District of Missouri,
Southern Division, The Honorable Brian C. Wimes, Presiding
22:3111-CV-S-BCW

---

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS'**

---

Mark K. Gyandoh
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

ARGUMENT ......................................................................................1

I.    Plaintiffs Plausibly Alleged Defendants Implemented A Flawed Process For Monitoring the Plan's Administrative and Recordkeeping Fees and Defendants' Arguments to the Contrary Lack Substance ................................................................1

    A.    Plaintifffs' Comparator Plans Provide a Meaningful Benchmark To Plausibly State a Claim That The Plan's Recordkeeping Fees were Excessive and Defendants' Arguments to the Contrary Lack Substance ..............................1

    B.    The Totality of the Circumstances as Alleged in the Amended Complaint Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Mannager and Defendants' Arguments to the Contrary Lack Merit ...............10

    C.    The ICI Chart is a Useful Measurement and Defendants' Arguments to the Contrary Lack Merit .....................................12

II.    The Complaint Alleges Sufficient Facts to State A Claim For Failure To Monitor .........................................................................13

III.    The District Court Erred In Dismissing Plaintiffs' Complaint Without Providing Plaintiffs' the Opportunity to Seek Leave to Amend and Defendants arguments to the Contrary Lack Substance ................................................................14

CONCLUSION .............................................................................15

Appellate Case: 23-2501    Page: 2    Date Filed: 11/13/2023 Entry ID: 5334871

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ........................................................ 3, 4, 5, 7

*Allison v. L Brands, Inc.*,
2021 WL 4224729 (S.D. Ohio Sept. 16, 2021) ....................................... 4

*Bouvy v. Analog Devices, Inc.*,
2020 WL 3448385 (S.D. Cal. June 24, 2020) ......................................... 13

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585, 598 (8th Cir. 2009) .............................................. *Passim*

*Cassell v. Vanderbilt Univ.*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018) .............................................. 4

*Davis v. Magna Int'l of America, Inc.*,
2021 WL 1212579 (E.D. Mich. March 31, 2021) ................................. 4, 13

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ......................................................... 6

*Disselkamp, et al. v. Norton Healthcare, Inc. et al.*,
2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) ......................................... 4

*Frey v. City of Herculaneum*,
44 F.3d 667, 672 (8th Cir. 1995) ................................................... 14

*Garcia v. Alticor, Inc.*,
No. 1:20-cv-01078-PLM-PJG (W.D. Mich. Aug. 9, 2021) ....................... 4, 7

*Huang v.* TriNet *HR III, Inc.*,
No. 8:20-cv-2293, 2022 WL 93571, (M.D. Fl. Jan. 10, 2022) ................... 13

iii

*Hughes v. Nw. Univ,*
63 F.4th 615 (7th Cir. 2023) .............................................................*Passim*

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ......................................13

*Matney et al. v. Barrick Gold of North America, et al.*,
80 F.4th 1136 (10th Cir. 2023) .............................................................9

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) .......................................................... 3, 5, 6

*McCool v. AHS Mgmt. Co.*,
2021 WL 826756 (M.D. Tenn. Mar. 4, 2021) ....................................4, 13

*McNeilly v. Spectrum Health Sys.*,
No. 1:20-cv-00870-PLM-PJG (W.D. Mich. July 16, 2021) .....................4

*Miller v. AutoZone, Inc.*,
2020 WL6479564 (W.D. Tenn. Sept. 18, 2020) .....................................4

*Moore et al. v. Humana, Inc. et al.*,
No. 3:21-cv-00232-RG. (W.D.Ky. Mar. 31, 2022) .................................4

*Parmer, et al. v. Land O'Lakes, Inc., et al.*,
2021 WL 464382 (D. Minn. Feb 9, 2021) ..............................................1

*Pinnell v. Teva Pharmaceuticals USA, Inc.*,
2020 WL 1531870 (E.D. Pa. March 31, 2020) ......................................13

*Reinholdson v. Minn.*,
2001 WL 34660104 (D. Minn. Oct. 26, 2001) ......................................14

*Rodriguez et al. v. Hy-Vee, Inc.* et al.,
No. 22-cv-00072-SHLHCA, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022)1, 5, 10

*Rosenkranz v. Altru Health Sys.*,
No. 3:20-CV-168, 2021 WL 5868960 (D.N.D. Dec. 10, 2021) .........1, 13

*Silva v. Evonik Corp.*,
2020 U.S. Dist. LEXIS 250206 (D.N.J. Dec. 30, 2020) .........................13

Appellate Case: 23-2501    Page: 4    Date Filed: 11/13/2023 Entry ID: 5334871

*Smith v. CommonSpirit Health,*
37 F.4th 1160 (6th Cir. 2022) ........................................................ 3, 4, 5, 7

*Williams v. Town of Okoboji*,
606 F.2d 812 (8th Cir. 1979) ....................................................................14

Appellate Case: 23-2501      Page: 5      Date Filed: 11/13/2023 Entry ID: 5334871

# ARGUMENT

**I. Plaintiffs Plausibly Alleged Defendants Implemented a Flawed Process For Monitoring the Plan's Administrative and Recordkeeping Fees and Defendants' Arguments to the Contrary Lack Substance.**

### A. Plaintiffs' Comparator Plans Provide a Meaningful Benchmark to Plausibly State a Claim That The Plan's Recordkeeping Fees were Excessive and Defendants' Arguments to the Contrary Lack Substance.

Plaintiffs' comparator plans provide a meaningful benchmark to plausibly state a claim that the Plan's recordkeeping and administration ("RKA") fees were excessive. Plaintiffs allege the type of benchmarks that are routinely upheld by district courts throughout the country, including in this Circuit.[1] Defendants argue, however, that the Eighth Circuit should adopt a standard that would make it impossible for a plaintiff to state a claim challenging a Plan's excessive RKA fees.

---

[1] See, *See, e.g., Rodriguez v. Hy-Vee, Inc* 2022 WL 16648825, at *9 (S.D. Iowa Oct. 21, 2022) (holding, "the crux of the dispute here is whether Plaintiffs have done enough to nudge their pleading across the plausibility line by identifying seven large comparator plans with substantially lower recordkeeping fees than the Hy-Vee Plan and providing bits and pieces of other information to the effect that fees should be no higher than $35 (or maybe $45) per participant. The Court concludes they have.") *Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 595-96 (8th Cir. 2009) (holding that plaintiff stated claim based on plan's alleged failure to use its large size to make sure lower-cost investment options were available to participants); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1307 (D. Minn. 2021) (denying motion to dismiss where plaintiffs alleged the "recordkeeping fees far surpass the market rate" and "superior or comparable recordkeeper plans were available"); *Rosenkranz v. Altru Health Sys.*, No. 3:20-CV-168, 2021 WL 5868960, at *11 (D.N.D. Dec. 10, 2021) (denying motion to dismiss where plaintiffs alleged "the size of the Plan's assets and number of participants qualified it for lower-cost recordkeeping services")

1

The Eighth Circuit has held, "[i]f plaintiffs cannot state a claim without pleading facts which tend systematically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief." *Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). Defendants argue Plaintiffs' Amended Complaint should be dismissed because Plaintiffs failed to allege facts that are in the sole possession of the Defendants or not available to Plaintiffs *i.e.*, details of the exact breakdown of recordkeeping services and pricing that is only available in Recordkeeping Agreements that are not available to Plaintiffs. Not only is Defendants' argument contrary to the holding in *Braden,* but it is also not reflective of how RKA pricing works for plans such as the Plan here. All national recordkeepers have the capability to provide all of the aforementioned recordkeeping services at very little cost to all large defined contribution plans, including those much smaller than the Plan. In fact, several of the services, such as managed account services, self-directed brokerage, Qualified Domestic Relations Order processing, and loan processing are often a profit center for recordkeepers. (V.1, App.029; R. Doc. 24, at ¶ 82.) The cost of providing recordkeeping services often depends on the number of participants in a plan. Plans with large numbers of participants can take advantage of economies of

2

scale by negotiating a lower per-participant recordkeeping fee. Because recordkeeping expenses are driven by the number of participants in a plan, the vast majority of plans are charged on a per-participant basis. (V.1, App.029; R. Doc. 24, at ¶ 83.)

Defendants argue that under *Matousek v MidAmerican Energy Co*., the "key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison – a meaningful benchmark'" 51 F.4th 274, 278 (8th Cir. 2022). Defendants further argue that *Matousek* means that in order to provide a "meaningful benchmark," plaintiffs must "address how the *specific services* provided by T. Rowe Price to the Plan were equivalent in value to the services provided to the comparator plans." Defendants cite to the Sixth Circuit opinion in *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) and the Seventh Circuit opinion in *Albert v. Oshkosh Corp* 47 F.4th 570 (7th Cir. 2022) as holding that Plaintiffs need to plead detailed allegations about the specific services in the Plan and the comparator plans in order to show a meaningful benchmark. However, Defendants' interpretation of these Seventh and Sixth Circuit opinions is not even followed in the Sixth and Seventh Circuits. Following these two cases, the Seventh Circuit in *Hughes v. Nw. Univ,* 63 F.4th 615, 632 (7th Cir. 2023) held the following:

> Unlike in *Albert*, plaintiffs here assert "[t]here are numerous recordkeepers in the marketplace who are *equally* capable of providing a high level of service to large defined contribution plans like the Plans." So, plaintiffs maintain that the quality or type of

3

recordkeeping services provided by competitor providers are comparable to that provided by Fidelity and TIAA. **Plaintiffs also plead that because recordkeeping services are "commoditized ... recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plans."** In short, plaintiffs allege that recordkeeping services are fungible and that the market for them is highly competitive. Plaintiffs also contend that $35 per participant was a reasonable recordkeeping fee based on the services provided by existing recordkeepers and the Plans' features. **Unlike the plaintiffs in *CommonSpirit Health*, plaintiffs plead that the fees were excessive relative to the recordkeeping services rendered. *See* 37 F.4th at 1169.**

*Id.* (Emphasis added)

Here, the Plaintiffs easily satisfy the pleading requirement of *Albert* and *Smith* as clarified by the Seventh Circuit in *Hughes*.[2] The plain language of *Hughes* clearly

---

[2] Although *Hughes* is a Seventh Circuit opinion and *Smith* is a *Sixth* Circuit opinion, district courts in the Sixth Circuit are in line with *Hughes'* interpretation of *Smith* and have consistently upheld nearly identical recordkeeping claims. *See*, e.g, *Moore et al. v. Humana, Inc. et al.*, No. 3:21-cv-00232-RG, slip op. (W.D.Ky. Mar. 31, 2022) (upholding allegations of excessive recordkeeping and administration costs where "Plaintiffs include a chart comparing similarly situated plans, including a comparison of number of participants, amount of assets, and recordkeeping fees paid."); *Moore et al. v. Humana*, No. 3:21-cv-232 (W.D. Ky. Dec. 2, 2022) (Order denying motion for reconsideration); *Garcia, et al., v. Alticor, Inc., et al.,* No. 1:20-cv-1078 (W.D. Mich. Aug. 23, 2022) (order denying motion for reconsideration); *McNeilly et al. v. Spectrum Health Systems, et al.,* No. 1:20-cv-870 (W.D. Mich. Dec. 20, 2022) (order denying motion for reconsideration); *Allison v. L Brands, Inc.,* 2021 WL 4224729, at *8 (S.D. Ohio Sept. 16, 2021) (upholding excessive fee claims); *McCool v. AHS Management Company, Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021) (same); *Davis v. Magna Int'l of America, Inc.,* 2021 WL 1212579 (E.D. Mich. March 31, 2021); *Cassell v. Vanderbilt*, 285 F.Supp.3d 1056, 1061 (M.D. Tenn. 2018) (granting in part and denying in part defendants' motion to dismiss allegations of excessive fees); *Disselkamp, et al. v. Norton Healthcare, Inc. et al.,* 2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) (same); *Miller v. Autozone,* 2020

4

states that the holdings of *Albert* and *Smith* are satisfied by alleging ""[t]here are numerous recordkeepers in the marketplace who are *equally* capable of providing a high level of service to large defined contribution plans like the Plans,'" and "because recordkeeping services are 'commoditized ... recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plans.'" *Id.* Here, that's exactly what the plaintiffs did. Like in *Hughes*, Plaintiffs' Amended Complaint alleges detailed lists of "the two types of essential recordkeeping services provided by all national recordkeepers for large plans with substantial bargaining power (like the Plan)." (V.1, App.024; R. Doc. 24, at ¶ 79.) The plaintiffs also allege, "The cost of providing recordkeeping services often depends on the number of participants in a plan. Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee. Because recordkeeping expenses are driven by the number of participants in a plan, the vast majority of plans are charged on a per-participant basis." (V.1, App.025; R. Doc. 24, at ¶ 83.)

Furthermore, Defendants' interpretation of *Matousek* has already been rejected by at least one district court in this Circuit. In *Rodriguez v. Hy-Vee* the court

WL 6479564, at * 8-10 (W.D. Tenn. Sept. 18, 2020) (denying in toto motion to dismiss excessive fee claims).

5

held, "The Eighth Circuit's recent decision in *Matousek* is not to the contrary... Unlike *Matousek*... Defendants have given the Court no reason to doubt the plausibility of Plaintiffs' allegation that 'all' recordkeepers in large 401(k) plans provide the same suite of recordkeeping services, and thus the Hy-Vee Plan paid too much. *See Davis*, 960 F.3d at 483 (requiring competing inferences to be resolved in favor of the non-moving party)."

Knowing the holding of *Braden,* Defendants are implicitly, if not explicitly, arguing the Eighth Circuit should hold that it is impossible to state an ERISA claim regarding excessive RKA fees without citing to recordkeeping agreements of both the challenged plan and comparator plans, which participants often do not have access to. Without recordkeeping agreements it is impossible to allege in any greater detail regarding recordkeeping services offered by the Plan or comparator plans. Defendants argue that "it is of no moment" that Plaintiffs don't have access to recordkeeping agreements because "Plaintiffs have substantial information available to them, both publicly and via required ERISA disclosures including 'plan documents, summary plan descriptions' and 'account statements...'" (Def. Br. at 30 fn. 6.) However, as Defendants know, none of these documents contain any more information regarding what fees were paid for specific recordkeeping *services* than what has been alleged in the Amended Complaint.

Appellate Case: 23-2501    Page: 11    Date Filed: 11/13/2023 Entry ID: 5334871

Defendants then argue, "As the *Hughes II* complaint shows, there is more than one way to establish a meaningful benchmark for a plan's recordkeeping fees," but Defendants try to create the illusion that what distinguished *Hughes* from *Albert* and *CommonSpirit* was the fact that the Defendants in *Hughes* failed to consolidate recordkeepers, unlike four comparable plans. (Def. Br. at 30.) However, the Court in *Hughes* entertained the defendant's explanation for not consolidating recordkeepers, but emphasized the defendants' failure to lower fees through negotiating with defendants' recordkeepers:

> **Northwestern offers alternative explanations for its failure to consolidate recordkeepers** and to switch to a per capita fee arrangement. The university posits that dropping TIAA as a recordkeeper would remove the popular Traditional Annuity would have compromised the Plans' ability to offer Fidelity investments. Northwestern also highlights that TIAA imposes a penalty for withdrawing investments in the Traditional Annuity. **Although these are reasonable alternative explanations, they do not explain why the university did not negotiate with TIAA and Fidelity to lower fees for plan participants, whether through rebates or a modified fee arrangement.**

*Hughes,* 63 F.4th 615 at 633. (Emphasis added)

Defendants fail to acknowledge the plain language of *Hughes* states that what distinguished *Hughes* was that "[u]nlike in *Albert*" and "[u]nlike the plaintiffs in *CommonSpirit Health,* plaintiffs plead that fees were excessive relative to the recordkeeping services rendered" because "In short, plaintiffs allege that

7

recordkeeping services are fungible and that the market for them is highly competitive." *Id.* at 632.

Contrary to Defendants' argument, the Plaintiffs here allege greater detail regarding the comparator plans than the plaintiffs in *Hughes*. Unlike the plaintiffs in *Hughes* that offered only four examples of similar plans that lowered their recordkeeping fees, Plaintiffs here offered nineteen examples of plans that were able to negotiate lower RKA fees than the Defendants here. Also, all the comparator plans were large plans with roughly the same size or less participants than in the Plan. (V.1, App.027-031, R. Doc. 24, at ¶¶ 90-99.) Furthermore, eight of the comparator plans were large plans from 2018 with over 15,000 participants. (V.1, App.029-030; R. Doc. 24, at ¶¶ 96.) This is significant because, as alleged in the Amended Complaint, recordkeeping expenses are driven by the number of participants in a plan. (V.1, App.025; R. Doc. 24, at ¶ 83.) Despite having more participants than about 13 comparator plans, the Plan's recordkeeping costs were significantly higher than the comparator plans. (V.1, App.027-031; R. Doc. 24, at ¶¶ 96-99.) From 2016-2020, the Plan's per participant recordkeeping fees ranged from $47.64-$87.43, whereas the per participant recordkeeping fees for the comparator plans ranged from $23-$30 in the eight large plans, and $23-36 in the eleven plans ranging in size from 3,000 participants to just over 15,000. *Id.* A prudent fiduciary would have been

8

aware of the market rate for fees, recognized the increase in Plan fees as excessive, and leveraged the large plans size to negotiate a reduction in fees.

Defendants also cite the recent Tenth Circuit opinion in *Matney et al. v. Barrick Gold of North America, et al*., 80 F.4th 1136 (10th Cir. 2023); however, the court's opinion in *Barrick Gold* does not support Defendants' cause. The facts in *Barrick Gold* differ significantly from this case. The complaint in Barrick Gold did not contain a chart of any RKA fees from comparator plans, which the Plaintiffs include here in their Complaint to allege a "meaningful benchmark." See *Id*. at 1155. Furthermore, because the plaintiffs in *Barrick Gold* did not allege any RKA fees of comparator plans, the court also did not address whether those comparator plans constitute a meaningful benchmark because "The cost of providing recordkeeping services often depends on the number of participants in a plan. Plans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee. Because recordkeeping expenses are driven by the number of participants in a plan, the vast majority of plans are charged on a per-participant basis," (V.1, App.025; R. Doc. 24, at ¶ 83.) as plaintiffs allege here. The facts of *Barrick Gold* regarding RKA fees simply don't apply to the allegations here.

Defendants also criticize the use of the Fidelity stipulation as a comparator arguing "Plaintiffs do not explain why a discovery stipulation filed by Fidelity in a

different litigation has any bearing on the recordkeeping fees paid by this Plan." (Def. Br. at 31.) The Fidelity stipulation is relevant for the same reason that the other comparator plans are relevant. It is an example of a large comparator plan that was able to use its plan size to negotiate substantially lower recordkeeping fees than the Plan here. Furthermore, in *Rodriguez*, the district court in this Circuit upheld plaintiffs' recordkeeping claim where plaintiffs "identify[ed] seven 'Comparable' 401(k) plans with recordkeeping fees between $21 and $34 per year, as well as a stipulation from Fidelity in litigation in the District of Massachusetts that the value of recordkeeping services provided to plan participants was somewhere between $14 and $21 per participant per year starting in 2014." *Rodriguez* at *9. The court went on to hold, "the crux of the dispute here is whether Plaintiffs have done enough to nudge their pleading across the plausibility line by identifying seven large comparator plans with substantially lower recordkeeping fees than the Hy-Vee Plan and providing bits and pieces of other information to the effect that fees should be no higher than $35 (or maybe $45) per participant. The Court concludes they have."

B. **The Totality of the Circumstances as Alleged in the Amended Complaint Demonstrates that the Plan Fiduciaries Failed to Administer the Plan in a Prudent Manner and Defendants' Arguments to the Contrary Lack Merit.**

This Circuit has held, a complaint in an ERISA claim "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden* at 594. Here, Defendants improperly parse out plaintiffs'

10

allegations instead of addressing Plaintiffs claims as a whole. For example, Defendants' Brief contains different sections arguing Defendants failure to conduct a Request for Proposal **alone** doesn't state a claim, (Def. Br. at 33.) or benchmarks regarding total plan costs **alone** doesn't state a claim. (Def. Br. at 36.) Defendants' strategy is contrary to the holistic approach articulated in *Braden* and should be disregarded.

Here, as alleged in Plaintiffs' Opening Brief, in addition to alleging the meaningful comparator plans that show the Defendants could have negotiated lower per participant recordkeeping fees, the Plaintiffs allege several other factors that demonstrate Defendants' failure to adhere to fiduciary standards of prudence. Plaintiffs allege that at least seven funds had excessive expense ratios when compared to their peers from 2016 to 2020. (V.1, App.020-021; R. Doc. 24, at ¶¶67-69.) Plaintiffs also allege the total Plan costs were much higher than the average of its peers, alleging that the Plan paid a total plan cost of **172%** higher than average using the Investment Company Institute ("ICI") study from 2018. (V.1, App.022-023; R. Doc. 24, at ¶¶74-76.) Furthermore, because the Plan paid yearly amounts in RKA fees that were well above industry standards each year over the Class Period, there is little to suggest that Defendants conducted an appropriate Request for Proposal ("RFP") at reasonable intervals. (V.1, App.027; R. Doc. 24, at ¶89.)

11

The totality of the circumstances as alleged in the Amended Complaint clearly demonstrates that the Plan fiduciaries failed to administer the Plan in a prudent manner.

### C. The ICI Chart is a Useful Measurement and Defendants' Arguments to the Contrary Lack Merit

The Amended Complaint's allegations regarding the ICI studies is just one of the several benchmarks, that when considered together, infer Defendants' imprudent process. As argued in Plaintiffs' Opening Brief, the median and average cost comparisons charts in the FAC highlight a glaring failure in the Plan fiduciaries' investment selection and monitoring process. The fact that some of the Plan's funds had expense ratios that exceeded comparable funds by as much as **158%** in some instances, plausibly demonstrates imprudent conduct. (V.1, App.020; R. Doc. 24, at ¶89.) Furthermore, total plan cost of **172%** higher than average using the ICI study from 2018 also plausibly demonstrated imprudent conduct. (V.1, App.022-023; R. Doc. 24, at ¶¶74-76.) Using the ICI chart is appropriate because it uses an objective benchmark for measuring fee expenses: plan size. Had the Plan's fiduciaries faithfully executed their fiduciary duties, the expectation would be the expense ratios for the majority of the Plan's funds would be at or below the median and average prices similarly situated plans paid. Instead, the opposite was true, and the Plan's fees were significantly above the median and average expenses to plausibly suggest something was amiss.

12

There is "no one-size-fits-all approach" when it comes to picking benchmarks. *Davis*, 960 F.3d at 484. Notwithstanding Defendants' criticism of the use of the ICI median and averages charts, several courts have upheld claims based in part on the chart. *Huang v.* TriNet *HR III, Inc.,* No. 8:20-cv-2293, 2022 WL 93571, (M.D. Fl. Jan. 10, 2022), at *1, 5-8 (upholding prudence claim when plaintiffs alleged "the expense ratios for many funds in the Plans greatly excessed the ICI Median"); *Silva v. Evonik Corp.,* 2020 U.S. Dist. LEXIS 250206, at *12 (D.N.J. Dec. 30, 2020) ("Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment Company Institute and the fees of alleged comparators."); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 WL 1531870 at * 5 (E.D. Pa. March 31, 2020) ("[Plaintiffs] included three tables comparing investment options offered by the Plan to similar or identical lower-fee alternatives and comparing expense ratios to median fees in the same category); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at * 2 (S.D. Cal. June 24, 2020) ("the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses."); *see generally McCool*, 2021 WL 826756 (upholding allegations based on ICI median charts); *Davis v. Magna Int'l of America, Inc.*, 2021 WL 1212579, at * 7 (E.D. Mich. March 31, 2021) (court rejected defendants'

13

challenges of the ICI study finding "[t]o the extent that Defendants argue the merits of Plaintiffs' comparisons, such arguments are premature in a motion to dismiss").

## II. The Complaint Alleges Sufficient Facts to State A Claim For Failure To Monitor.

As argued in Plaintiffs' Opening Brief, Plaintiffs "have pleaded the underlying fiduciary breach necessary to support their failure to monitor claim." *Karg v. Transamerica Corp.*, 2019 WL 3938471 at * 9 (N.D. Iowa Aug. 20, 2019), Plaintiffs' Complaint contains similar factual allegations against the Monitoring Defendants that have been upheld in analogous cases. (V.1, App.033-034; R. Doc. 24, at ¶¶ 108-114); *See Rosenkranz*, at *12 ("Because Plaintiffs have sufficiently stated a claim for breach of the fiduciary duty of prudence, the Court finds that Plaintiffs have also sufficiently pleaded the derivative failure to monitor claim against Altru."). Accordingly, Plaintiffs have stated a plausible claim for the failure to monitor.

## III. The District Court Erred In Dismissing Plaintiffs' Complaint Without Providing Plaintiffs the Opportunity to Seek Leave to Amend and Defendants arguments to the Contrary Lack Substance.

Defendants state that Plaintiffs have not articulated how they would amend their pleadings to allege meaningful benchmarks, but Plaintiffs respectfully assert that Defendants misunderstood Plaintiffs' argument. (Def. Br. at 40.) Plaintiffs asserted in their Opening Brief that **the district court** pointed out ways how Plaintiffs could amend their complaint to state a claim but failed to give Plaintiffs an

14

opportunity to do so. (*See* Pls. Br. at 31-32). Given that this Court has held that district courts should grant leave to amend "liberally when 'justice so requires,'" the district court's dismissal of Plaintiffs' Complaint without providing leave to amend demonstrates a clear abuse of discretion. *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995) (quoting *Williams v. Town of Okoboji*, 606 F.2d 812, 814 (8th Cir. 1979)). "Ordinarily, **a pleading dismissed pursuant to Rule 12 should be dismissed without prejudice**." *Reinholdson v. Minn.*, 2001 WL 34660104, at *1 (D. Minn. Oct. 26, 2001) (internal citations omitted) (permitting plaintiffs to file a second amended complaint).

Defendants' argument that Plaintiffs cannot amend their complaint to allege a meaningful benchmark further highlights Plaintiffs' assertion that Defendants are asking this Court to make it impossible for a plaintiff to challenge a plan's RKA fees. As asserted above, Defendants' argument runs contrary to this Court's holding in *Braden.* (""[i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer. These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief." *Braden at* 598 (8th Cir. 2009).

## CONCLUSION

15

For the forgoing reasons, Plaintiffs-Appellants respectfully request the Court reverse the District Court's decision granting Defendants-Appellees' motion to dismiss and remand this case to the District Court for further proceedings on the merits.

Dated: November 9, 2023                    Respectfully submitted,

**CAPOZZI ADLER, P.C.**

_/s/ Mark K. Gyandoh_
Mark K. Gyandoh
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Email: markg@capozziadler.com

16

# CERTIFICATE OF COMPLIANCE

1.     I certify that this reply brief complies with the provisions of Fed.R.App.P. 28, 29, 31 and 32, as well as Eighth Circuit Rules 25A, 28A and 32A, and that this brief contains 3,877 words, excluding the parts of the reply brief exempted by Fed.R.App.P. (32)(a)(7).

2.     I certify that this reply brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P 32(2)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word Times New Roman 14 point font.

3.   This document has been scanned for viruses and the brief is virus-free.


Dated:  November 9, 2023                     */s/ Mark K. Gyandoh*

17

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on November 9, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Mark K. Gyandoh*